THE PEOPLE OF THE STATE OF NEW YORK ex rel. WILLIAM
    J. MATHESON & COMPANY, LIMITED, Appellant, *v.* JAMES
    A. ROBERTS, as Comptroller of the State of New York,
    Respondent.

1. TAX — IMPORTED GOODS. Where the original packages in which
goods were imported have been broken, and the goods taken therefrom
and placed in store upon sale, thereby becoming mixed with other prop-
erty, the restrictions of the Federal Constitution upon imposts on imports
and upon the regulation of foreign commerce do not apply, and the goods
become subject to the taxing power of the state.

2. CORPORATIONS — EXEMPTION OF MANUFACTURING BUSINESS FROM
TAXATION LOST BY ADDITIONAL BUSINESS. When a not merely incidental
portion of the business of a domestic corporation engaged in manufactur-
ing in this state is that of selling from broken packages imported goods
which are within the taxing power of the state, so that the corporation is
engaged in other business besides that of manufacturing, no exemption
from taxation under the Corporation Tax Act of 1880 (Ch. 542), as
amended, exists as to the business of manufacturing.

3. FRANCHISE TAX NOT VIOLATIVE OF FEDERAL CONSTITUTION. The
imposition upon a domestic corporation of the franchise tax, under the act
of 1880 (Ch. 542) as amended, computed upon its dividends, is not a tax
upon property and is not violative of the restriction of the Federal Con-
stitution upon the taxation of imports, even if a portion of the corporation's
property consists of imported goods.

*People ex rel. Matheson & Co.* v. *Roberts,* 27 App. Div. 632, affirmed.

(Argued January 9, 1899; decided February 28, 1899.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the third judicial department, entered
March 24, 1898, which affirmed a determination of the comp-
troller in assessing a tax against the relator under chapter 542
of the Laws of 1880 and the acts amendatory thereof, and dis-
missed a writ of certiorari to review the proceedings of the
comptroller.

The facts, so far as material, are stated in the opinion.

*John B. Green* and *Edmund L. Cole* for appellant. The
relator's business in this state, other than manufacturing, was
solely foreign commerce. (*People ex rel.* v. *Campbell,* 139

N. Y. 68; *People ex rel.* v. *Roberts*, 27 App. Div. 455.)
The tax, in so far as it is based upon the capital stock of the
relator employed in foreign commerce, is forbidden by the
Federal Constitution.   (Const. U. S. art. 1, §§ 8, 10; *People v.*
*E. T. Co.*, 96 N. Y. 388; *People ex rel.* v. *Wemple*, 138 N.
Y. 1; *Moran* v. *City of New Orleans*, 112 U. S. 69; *Fargo*
v. *Michigan*, 121 U. S. 230; *Brennan* v. *City of Titusville*,
153 U. S. 289; *People ex rel.* v. *Roberts*, 85 N. Y. S. R. 487;
*H. Ins. Co.* v. *New York*, 134 U. S. 594; *People ex rel.* v.
*Wemple*, 129 N. Y. 558; *People ex rel.* v. *Campbell*, 74 Hun,
210; *People ex rel.* v. *Roberts*, 152 N. Y. 59.)   The tax, if held
to apply to domestic corporations, makes a distinction between
domestic and foreign corporations, and imposes a burden
upon the domestic that cannot be imposed on foreign.
(*Fargo* v. *Michigan*, 121 U. S. 230.)   The business, other than
manufacturing done by relator in this state, was not included
in the word " business," as used in the taxing statute.   (*Peo-*
*ple ex rel.* v. *Wemple*, 138 N. Y. 1; *People ex rel.* v. *Rob-*
*erts*, 22 App. Div. 282; *People ex rel.* v. *Roberts*, 85 N. Y.
S. R. 487; *Crutcher* v. *Kentucky*, 141 U. S. 47; *Emert* v.
*State of Missouri*, 156 U. S. 296; *Robbins* v. *Shelby Co. Tax.*
*Dist.*, 120 U. S. 489; *Brennan* v. *City of Titusville*, 153 U.
S. 289; *Mineral Co.* v. *Clute*, 7 Misc. Rep. 124; *M. V. Co.*
v. *Connell*, 10 Misc. Rep. 553.)

*John C. Davies, Attorney-General*, and *G. D. B. Hasbrouck,*
*Deputy Attorney-General*, for respondent.   The relator, not
being wholly engaged in carrying on manufacture within the
state, was amenable to the tax and was properly taxed by the
comptroller.   (*People ex rel.* v. *Roberts*, 90 Hun, 535; *Peo-*
*ple ex rel.* v. *Campbell*, 145 N. Y. 587; *People ex rel.* v.
*Roberts*, 4 App. Div. 388; 151 N. Y. 652; *People ex rel.* v.
*Roberts*, 155 N. Y. 1; *People ex rel.* v. *Wemple*, 133 N. Y.
325.)   The claim of the relator, that the imposition of this tax
upon its franchise is at war with the provision of the Federal
Constitution which reserves to Congress the right to regulate
foreign commerce, ought not to be countenanced.   (*People ex*
*rel.* v. *Wemple*, 131 N. Y. 64; *G. F. Co.* v. *Penn.*, 114 U. S.

211; *H. Ins. Co.* v. *New York*, 134 U. S. 601; *Bowman* v. *C., etc., R. R. Co.*, 125 U. S. 507; *Leisy* v. *Hardin*, 135 U. S. 119; *People ex rel.* v. *Roberts*, 19 App. Div. 576; 154 N. Y. 101; *People ex rel.* v. *Wemple*, 138 N. Y. 6; *Woodruff* v. *Parham*, 8 Wall. 123; *P. C. Co.* v. *Pennsylvania*, 141 Penn. St. 23; *Matter of Sherman*, 153 N. Y. 1.)

HAIGHT, J.   This appeal brings here for review an order made upon the return to a writ of certiorari, sued out by the relator, for the purpose of reviewing the determination of the comptroller, whereby the relator was adjudged liable to pay certain taxes and penalties to the state under chapter 542 of the Laws of 1880, and the laws amendatory thereof, providing for the assessment and payment of taxes to the state by certain corporations.

The relator is a domestic corporation, organized under chapter 611 of the Laws of 1875, for the purpose of "importing, manufacturing, buying and selling aniline colors, dye stuffs, dyewood and sumach extracts, and such other articles of manufacture and merchandise as shall be incidental to or of the same general nature and description as the foregoing."

The comptroller imposed taxes upon it under chapter 542 of the Laws of 1880 and the acts amendatory thereof (Ch. 361, Laws of 1881; ch. 501, Laws of 1885; ch. 463, Laws of 1889; ch. 522, Laws of 1890), for the six years ending November 1st, 1895, computing the taxes upon the basis of $250,000 capital employed within this state, at the rate of two and one-half mills, aggregating $3,750 and penalty of $375, making $4,125.   Upon a rehearing such decision was revised by reducing the rate of taxation to two and seventeen forty-eighths mills, and the amount of the tax and penalty from $4,125 to $3,884, which amount was paid to the state treasurer by the relator on the 24th day of December, 1896.

On the 26th day of January, 1897, the relator obtained a writ of certiorari to review the determination of the comptroller.   The Appellate Division affirmed his action and the relator has appealed to this court.

The relator claims that its business in this state, other than manufacturing, was solely foreign commerce, and that, being a manufacturing corporation, it was not taxable under section three of chapter 542 of the Laws of 1880, as amended, which provides that every corporation, except manufacturing or mining corporations, or companies, wholly engaged in carrying on manufacturing, or mining ores within this state, shall be subject to taxation as provided by said chapter.

The relator further claims that any tax based upon its capital stock thus employed in foreign commerce is forbidden by section 10 of article one of the Federal Constitution, which is as follows : " No state shall, without the consent of the Congress, lay any impost or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws," and clause three of section eight of article one thereof, which provides that Congress shall have power "to regulate commerce with foreign nations and among the several states."

It appears that the relator was engaged in the business of manufacturing aniline dyes in this state, and for that purpose imported, in part, its raw material, and in part purchased it from domestic dealers ; that it also was engaged in the business of importing manufactured dyes, which were placed in stock with its manufactured goods and sold as a part of its general stock in trade, some in the original packages in which it was imported and some in broken packages.

It is contended on behalf of the relator that the goods imported for sale were merely incidental to its business of manufacturing ; that many houses preferred to purchase all of their goods from the relator, and that in order to accommodate and supply its customers it purchased and kept on hand other dyes than those manufactured by it, so that it might have a complete assortment from which the wants of its customers might be supplied. With reference to this contention, it appears that about one-half of the relator's business consisted in the sale of goods other than those manufactured by it, and, under such circumstances, a court which is limited in its review to questions of law, would hardly be justified in holding that

166    People ex rel. Matheson & Co. *v.* Roberts.    [Feb.,

Opinion of the Court, per Haight, J.        [Vol. 158.

such a volume of business was merely incidental to the company's business of manufacturing.

It is well settled that, under the Constitution of the United States, Congress has the exclusive power to regulate commerce, both foreign and interstate, and to impose taxes on importations. It is equally well settled that property imported, after it has been entered at a port and the duty has been paid and it has passed from the jurisdiction of the United States to that of the state and become mixed with other property, so as to lose its distinctive character as an import, becomes subject to the taxing power of the state. This was conceded by Chief Justice Marshall in the case of *Brown* v. *State of Maryland* (12 Wheaton, 419, 441), in which he held that an act of the legislature, requiring that persons engaged in the business of selling imported goods should pay a license fee, was invalid. In speaking of the power of the state, under this article of the Constitution, he says : " There must be a point of time when the prohibition ceases and the power of the state to tax commences." He then speaks of the difficulty in determining the time, and likens it to the difficulty in distinguishing the intervening colors between white and black when they approach so closely as to perplex the vision in marking the distinction between them, and concludes : " It is sufficient for the present to say, generally, that when the importer has so acted upon the thing imported, that it has become incorporated and mixed up with the mass of property in the country, it has, perhaps, lost its distinctive character as an import, and has become subject to the taxing power of the state ; but while remaining the property of the importer, in his warehouse, in the original form or package in which it was imported, a tax upon it is too plainly a duty on imports, to escape the prohibition in the constitution." (*Low* v. *Austin*, 13 Wall. 29 ; *State Tax on Railway Gross Receipts*, 15 Wall. 284, 295 ; *Waring* v. *Mayor*, 8 Wall. 110, 121 ; *Cook* v. *Penn.*, 97 U. S. 566, 573 ; *Machine Co.* v. *Gage*, 100 U. S. 679.) It will thus be seen that the Supreme Court of the United States has had difficulty in determining the precise time when imported goods pass from under the

clause of the Constitution referred to, and come under the taxing power of the state.    The court, however, in all of the cases concedes that where the original packages in which the goods were imported have been broken, and the goods taken therefrom and placed in store upon sale, thereby becoming mixed with other property, they become subject to the taxing power of the state.

In this case, it does not become necessary to pursue the subject further, or to determine any question with reference to original packages.    As we have shown, a portion of the relator's business was that of selling goods from the broken packages, and the question presented for our determination is whether the relator is exempted as a manufacturing corporation.    It is not, if it is engaged in other business.    The state has the power to tax, so far as the relator's business is that of selling goods from broken packages, and it consequently follows that no exemption exists as to its business of manufacturing.    (*People ex rel. W. E. Co.* v. *Campbell*, 145 N. Y. 587.)

We have, thus far, considered the case upon the theory that the tax was a tax upon property, which at some time had been imported from a foreign country, but the tax imposed is, we think, in no sense a tax upon property.    It will be observed that the relator is a domestic corporation organized under the laws of this state, and is doing business within the state.    It is a creation of the state, subject to the laws of the state, enjoying the benefits and protection afforded by the state, and as such should bear its part of the burdens necessary to maintain the government of the state from which it derives its life and income.    The statute provides that it shall pay taxes upon its franchise annually, to be computed upon its dividends declared.    Such is the tax imposed in this case.    No tax is imposed upon its property, nor is there any discrimination made between this and other corporations.    We do not understand that a statute imposing such a tax is violative of any provision of the Constitution of the United States.    In the case of *Home Insurance Company* v. *New York State* (134 U. S. 594) it was held, as stated in the head note, that " A tax which

is imposed by a state statute upon 'the corporate franchise or business' of all corporations incorporated under any law of the state or of any other state or country, and doing business within the state, and which is measured by the extent of the dividends of the corporation in the current year, is a tax upon the right or privilege to be a corporation and to do business within the state in a corporate capacity, * * * and, being thus construed, its imposition upon the dividends of the company does not violate the provisions of the statute exempting bonds of the United States from taxation." While, as we have seen, the decision of that case had reference to the statute exempting bonds from taxation, the discussion involved the cases arising under the Constitution with reference to taxes on imports, and, in effect, covered the exemption in such cases. That case was an affirmance of the decision of this court (92 N. Y. 328), and was followed in the case of *People ex rel. Southern Cotton Oil Co.* v. *Wemple, as Comptroller,* (131 N. Y. 64).

The order should be affirmed, with costs.

All concur.

Order affirmed.