New York Terminal Company, Appellant, *v.* Charles H. Gaus, as Comptroller of the State of New York, Respondent.

Tax — corporations — receivers — when franchise taxes levied upon a corporation, during pendency of receivership in foreclosure, constitute a lien on the corporate property prior to other incumbrances.

The property of a corporation exercising a franchise was sold to plaintiff on foreclosure, subject to all taxes which might be liens thereon. The property was operated previous to the sale by a receiver *pendente lite* appointed in the foreclosure action; during this period franchise taxes, for the privilege of doing business or exercising its corporate franchises, were levied upon the corporation by the comptroller of the state under section 182 of the Tax Law (Cons. Laws, ch. 60). *Held,* that such taxes constituted liens upon the property paramount to all prior incumbrances, and that plaintiff took the corporate property subject to these liens, and, in effect, thereby agreed that the property was, primarily, liable for their payment.

*N. Y. Terminal Co.* v. *Gaus,* 139 App. Div. 347, affirmed.

(Argued February 1, 1912; decided March 5, 1912.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered July 29, 1910, in favor of defendant, upon the submission of a controversy under section 1279 of the Code of Civil Procedure.

The nature of the controversy and the facts, so far as material, are stated in the opinion.

*William H. Blymyer* for appellant. The acts of the comptroller were null and void on the grounds that he did not have (1) jurisdiction of the subject-matter, as the law only makes provision as to the taxing of a "corporation, joint-stock company or association doing business in the state * * * for the privilege of doing business or exercising its corporate franchises," and contains no

provisions for taxing corporations that have ceased to do
business in the state and are in the hands of receivers
after the exercise of that privilege has ceased; or (2) jur-
isdiction of the person of the receiver, especially if not
shown that he was exercising that privilege in behalf of
the corporation. (*Merritt* v. *Portchester*, 71 N. Y. 309;
*Bruecher* v. *Portchester*, 101 N. Y. 240; *U. S. Trust Co.*
v. *Mayor, etc.*, 144 N. Y. 493; *Newman* v. *Supervisors*,
45 N. Y. 688; *Horn* v. *Town of New Lots*, 83 N. Y. 104.)

*Thomas Carmody, Attorney-General* (*Henry Selden
Bacon* and *C. R. McSparren* of counsel), for respondent.
The fact that the Brooklyn Ferry Company was in the
hands of a receiver does not affect the levying of a fran-
chise tax. (*Central Trust Co.* v. *N. Y. C. & N. R. R.
Co.*, 110 N. Y. 250; *People ex rel. Joline* v. *Williams*,
200 N. Y. 528.)

GRAY, J. The plaintiff, a foreign corporation, pur-
chased at a judicial sale, held under a decree in fore-
closure of a mortgage given by the Brooklyn Ferry
Company of New York, all of the corporate assets and
claimed that it acquired the properties sold free of cer-
tain franchise taxes theretofore levied by the comptroller
of the state. The parties agreed to submit the determi-
nation of their controversy to the Appellate Division, in
the third department, and that court ordered judgment
for the defendant; determining that the franchise taxes
were duly assessed and were valid liens upon the property
conveyed to the plaintiff. The facts agreed upon in the
submission show that the Brooklyn Ferry Company, a
domestic corporation carrying on a ferry business on
the East river, had defaulted in the payment of the
interest due on its outstanding second mortgage bonds.
On October 16th, 1906, an action was commenced by the
trustee to foreclose the mortgage and, on the same date,
a receiver was duly appointed of the ferry company; who

33

duly qualified and took possession of all of its assets. He continued "to hold, operate and manage all of the property of the Ferry Company, until the same was sold." On June 25th, 1908, "all of the property of said Ferry Company, corporeal and incorporeal, save the franchise to be a corporation, * * * was offered for sale, subject to all taxes which might be liens thereon, at the time of sale, at public auction, by * * * referee," etc. The plaintiff "bid in and purchased all of the assets of said Ferry Company" and "the title * * * subject to such notice of liens, passed to" the plaintiff, under the referee's deed. In 1906 and in 1907, the comptroller of the state levied against the Brooklyn Ferry Company, pursuant to section 182 of the Tax Law, a tax, which became due and payable on the 15th day of January in each of those years; neither of which taxes was paid and as to neither of which had any proceedings for re-adjustment, or for a review, been taken by the company.

The facts, perhaps, may be meagrely stated in the submission; but I think quite sufficient appear to enable us to determine the question of the plaintiff's right to demand that the tax be declared void. There is but the one question, which needs our consideration, and that is whether the property sold under the decree and conveyed to this plaintiff passed to it burdened with the franchise taxes, levied and unpaid during the two years of the receiver's operation. I think that it did so pass and that the judgment below was right.

Section 182 of the Tax Law imposes an annual franchise tax upon every corporation doing business in this state, "for the privilege of doing business, or exercising its corporate franchise." Section 197 of the Tax Law provides that this tax "shall be due and payable on or before the 15th day of January in each year" and "such tax shall be a lien upon and bind all the real and personal property" of the corporation, "from the time when it is payable until the same is paid in full." It is

the contention of the appellant, in effect, that the provisions for a franchise tax have no application to such a case as this, where the corporation is in the hands of a receiver and has ceased, itself, to operate. I think the fallacy of the contention is in an evident assumption that, in his conduct of the business of the corporation, the corporate franchise is not being used by the receiver. The tax levied by the comptroller by virtue of section 182 was a tax upon the franchise, as distinguished from the property of the corporation. It is imposed, as it declares, upon the privilege of carrying on business and of exercising the corporate franchises. (*People* v. *Home Ins. Co.*, 92 N. Y. 328; *People ex rel. U. S. A. P. P. Co.* v. *Knight*, 174 id. 475.) Being, therefore, a tax of this nature; that is to say, a tax not on the property, itself, the argument is advanced that it is not paramount to prior incumbrances of record; in this case, the company's mortgages, and, therefore, when section 197 makes the tax a lien on the corporate property, it is only the company's equity of redemption which became affected.

I am unable to agree in this view of the question. We know from the record that the receiver, who was appointed of this corporation, continued to operate its ferry business and that the tax levied during the two years was upon its franchise, or privilege, to transact such a business. The reports of the company and the assessments of the comptroller show that. As he had no individual interest, but only the official possession of the property, the receiver could only have operated under the corporate franchise. That he was not a general receiver, as in sequestration proceedings, but only a receiver of the mortgaged property, *pendente lite*, however marked the distinction, is not material to our consideration. By virtue of his appointment, this receiver took possession of the mortgaged property and received the earnings as the officer of the court. The title to the property was not changed, but remained in the company, the mortgagor,

until the sale under the decree in the action. (*U. S. Trust Co.* v. *N. Y., W. S. & B. Ry. Co.*, 101 N. Y. 478, 483; *Keeney* v. *Home Ins. Co.*, 71 id. 396.) The receiver was but the arm of the court, which, by virtue of its inherent equity powers and under section 1810 of the Code of Civil Procedure, it reached out, to take in charge the property and to secure it during the litigation, that it might be appropriated as the judgment should determine. Operation of the corporation business might have been enjoined; but from its continuance by the receiver, the legal presumption, of course, is that it was authorized. The corporation was not dissolved; its franchise to conduct the ferry business was inexistence and any operation must have been by virtue of that franchise. The right of its officers to operate was taken away, for the time, by the court and was conferred upon the receiver, as its officer. Operation, therefore, could only have been under the corporate franchise and if so, then, I think that the right of the comptroller to levy a franchise tax attached and that the tax became a lien upon the corporate assets paramount to all prior incumbrances. It was made paramount by the statute making it "a lien upon all the real and personal property * * * until the same is paid in full." (Tax Law, sec. 197; *Eaton's Appeal*, 83 Pa. St. 152.) It was paramount, for the reason that the tax was upon the privilege of exercising the corporate franchise and of carrying on the business, through which the company was, by its earnings, to provide for its obligations. The paramount nature of the lien is, necessarily, implied and is not affected by the existence of prior incumbrances; any more than the tax would be affected by the fact that the company had operated its franchise at a loss. (*People ex rel. Fifth Ave. Bldg. Co.* v. *Williams*, 198 N. Y. 238, 243.) I am unable to perceive why the principle of the decision in the case of the *Central Trust Co.* v. *N. Y. City & Northern R. R. Co.*, (110 N. Y. 250), is not applicable to the pres-

ent case.  There a receiver had been appointed in seques-
tration proceedings.  Subsequently, another receiver was
appointed in an action to foreclose certain mortgages
executed by the company and the first receiver turned
over the possession of the property to him and he con-
tinued to operate the road.  The receiver declined to pay
taxes imposed under the Corporation Tax Act of 1880;
upon the ground that recourse should be had to the cor-
poration for their payment, " or to such funds as may
remain in the receiver's hands after the claims of the
mortgagees have been satisfied."  Holding that the taxes
were upon the franchise, as distinguished from the prop-
erty of the corporation, and that the railroad was
operated by the receiver under and by virtue of the fran-
chise, it was decided that the state had a paramount
right to the payment of the taxes.  Upon the question of
what the receiver was operating, Judge PECKHAM
observed that, in taking possession of the corporate prop-
erty and in operating it, he " uses the franchise, which
has been conferred by the State upon the company, and
he uses it as an officer of the court, which is administer-
ing the affairs of the company, and through the court
he acts as the company to the same extent *pro hac vice*
as if the board of directors were operating the railroad.
It is the franchise which is being used in both cases,
* * *  the same franchise is being used and the road
is operated under it by an officer of the court until, by
virtue of the legal proceedings connected with the receiv-
ership, the receiver is discharged," etc.  (p. 257.)  The
authority of this decision was, quite lately, recognized
and followed in *People ex rel. Joline* v. *Williams*, (200
N. Y. 528).

When the property of the Brooklyn Ferry Company
was sold "subject to all taxes which might be liens
thereon, at the time of the sale," the taxes in question
were comprehended as constituting liens upon the prop-
erty paramount to all prior incumbrances.  The plaintiff,

in purchasing with such notice, took the corporate property subject to these liens and, in effect, thereby agreed that the property was, primarily, liable for their payment.

For these reasons, I advise that the judgment appealed from be affirmed, with costs to the respondent.

Cullen, Ch. J. (dissenting). I dissent from the decision about to be made. I admit that the agreed statement of facts fails to state with proper accuracy certain matters material to the proper disposition of the controversy, but I think the inferences to be drawn from the statement are clear. If, however, I err in that view and the statement is insufficient, the judgment below should be reversed and the proceeding dismissed.

It is stated that in an action to foreclose a mortgage against the property of the Brooklyn Ferry Company a receiver of said company was appointed. I assume by this it is meant to allege that a receiver of the mortgaged property was appointed. A general receiver of the corporation could not be appointed in an action to foreclose a mortgage of its property. The distinction between the two kinds of receiverships is plain. (*Whitney* v. *N. Y. & Atlantic R. R. Co.*, 32 Hun, 164, 174; *U. S. Trust Co.* v. *N. Y., West Shore & B. Ry.*, 35 id. 341.) It is also stated that a sale of the property was made subject to all taxes that might be liens thereon at the time of sale, but this must be construed as meaning taxes which as liens were paramount to the lien of the mortgage foreclosed, for the statute declares that the effect of a conveyance upon the sale under the decree shall be the same as if the equity of redemption had been foreclosed. (Code Civ. Pro. sec. 1632; 2 R. S. p. 192, sec. 158.)

The purchaser at a sale under a decree in foreclosure is entitled to a conveyance free and clear from any incumbrance and may decline to carry out his agreement unless such a conveyance is tendered to him. Hence it was neces-

sary that the terms of sale should provide either that taxes and assessments would be allowed to the purchaser out of the purchase money, or that the sale was made subject to such taxes. Therefore, when a purchaser buys subject to the lien of taxes and assessments he buys subject to just such taxes and assessments as would be a charge on the proceeds of sale superior to the lien of the mortgage foreclosed. In other words, the sale is subject to just the same liens as were paramount to the mortgage before the sale.

The question, then, is whether the corporation franchise tax imposed on the ferry company is paramount to prior incumbrances. The imposition of a tax on property, which is a lien only on the particular piece of property taxed for the amount of that tax, is either primarily or secondarily a proceeding *in rem* and the lien of such a tax is paramount to all prior liens. A franchise tax is of an entirely different character from a tax on property. It, as well as the succession tax, has been held by this court not to be a tax on property, and the constitutionality of the tax depends on that holding. (*People ex rel. Vandervoort Realty Co.* v. *Glynn*, 194 N. Y. 387; *People ex rel. Matheson & Co.* v. *Roberts*, 158 N. Y. 162; *People ex rel. U. S. Aluminum P. P. Co.* v. *Knight*, 174 N. Y. 475.) It is levied on the corporation for the privilege, as the statute declares, of carrying on its business in a corporate or organized capacity (Tax Law, secs. 182, 184); not of doing business, but of doing business in a corporate capacity. The statute provides that such taxes "shall be a lien upon and bind all the real and personal property of the corporation, joint-stock company or association liable to pay the same." (Tax Law, sec. 197.) But what was the property of the corporation in this case on which the tax is made a lien? It was merely the equity of redemption in the mortgaged premises, which has been foreclosed. So also it is provided that the docket of a judgment makes it a charge upon the real property of the judgment debtor. (Code Civ. Pro. sec. 1251.) It

has never been imagined that by this provision it ever became anything more than a lien upon the debtor's interest in the real property.

The decision below seems to have proceeded on the ground that the right to run a ferry was a corporate franchise granted to the corporation against whose property the mortgage was foreclosed. There is noth-- ing in the case to show to whom the ferry privilege was granted by the municipality. As matter of fact many of the ferry privileges, as well as many of the old street railroad franchises in the city of New York, were granted not to corporations, but to individuals and their associ-- ates. The court below, however, considered that under our statutes individuals cannot own or operate railroads, and that, therefore, the operation of a railroad must be deemed to be under a corporate franchise, and treated a ferry franchise as analogous. If it is possible to settle any question by a uniform current of judicial authority, the settled law is clearly the reverse of the proposition asserted. From the earliest days of railroads corporations owning them have been authorized to mortgage not only the roads but the franchise to maintain and operate them. That necessarily gave to the mortgagees the right to fore-close the mortgage after default, and to the purchasers on the foreclosure the right to operate the road. No legisla-tion could deprive them of that right. But purchasers did not, by the mortgage sale, get the right to operate the road under a corporate existence, and the legislature could impose a privilege tax upon the purchasers as a condition for incorporation. (*People ex rel. Schurz* v. *Cook*, 110 N. Y. 443; *People ex rel. Schurz* v. *Cook*, 148 U. S. 397; *Memphis & L. R. R. R. Co.* v. *R. R. Commissioners*, 112 U. S. 609; *Minor* v. *Erie R. R. Co.*, 171 N. Y. 566; *People ex rel. Third Ave. Ry. Co.* v. *Public Service Comm.*, 203 N. Y. 299.) In the *Memphis & L. R. Railroad* case it is said: "The franchise of being a corporation need not be implied as necessary to

secure to the mortgage bondholders, or the purchasers at a foreclosure sale, the substantial rights intended to be secured. They acquire the ownership of the railroad, and the property incident to it, and the franchise of maintaining and operating it as such; and the corporate existence is not essential to its use and enjoyment." (p. 619.) In the *Minor* case this court held that for the privilege of re-incorporating, the purchasers at the foreclosure sale of a railroad could be required by the state to consent to legislation which the Supreme Court of the United States had held to be an invasion of their property rights in the mortgaged franchises. There was a dissent in that case, but the dissent was simply as to the construction of our statute. Of course, if the state may require purchasers on the foreclosure of a railroad to surrender part of their property for the privilege of incorporation, how would it be possible to deny those purchasers the right to use the property without incorporating?

The franchise to run a ferry, when granted, became property like the boats or any other property of the grantee, and for years has been taxable like other property under the provisions for the taxation of special franchises. Such tax is a tax on property and undoubtedly a lien on the property itself; but the taxes here in dispute are of exactly the same character, though different in rate, as that imposed on a company operating a bakery, and its imposition no more displaces the lien of the mortgage foreclosed than in the case of the bakery company it would displace the lien of a mortgage upon the bakehouse. In either case a receiver appointed in a foreclosure suit would take nothing by virtue of the corporate existence of the owner of the equity of redemption, but by virtue of the mortgage (*Whitney* v. *N. Y. & Atlantic R. R. Co.*, *supra*), and it would be a matter of indifference to him, and to the mortgagee in whose interests he had been appointed, whether the owner of the equity of redemption was an individual or corporation, or whether

the corporation was in existence or had been dissolved. Moreover, a mortgage might have been taken on the bakehouse when it was owned by private individuals, and subsequently the individuals might incorporate or convey to a corporation. The title of the corporation to the property would be exactly the same in either case, that is to say, owner only of the equity of redemption, but if the franchise tax would be a paramount lien to the mortgage in the one case, it would be equally so in the other. It is idle to attempt to draw a distinction between the two cases. If, however, such a distinction could be drawn, it would not support the decision below, since the statement in the case is not that the mortgage foreclosed was executed by the ferry company, but that it was against its property.

There is nothing in the case of *Central Trust Co.* v. *N. Y. City & N. R. R. Co.* (110 N. Y. 250), nor in the more recent case of *People ex rel. Joline* v. *Williams* (200 N. Y. 528), in opposition to these views. In the first case the receiver was operating the road, not merely as a receiver of the mortgaged premises, but also as a general receiver of the corporation, and payment of the franchise tax was ordered out of the receipts of the road. This court there expressly declined to consider the question whether such taxes could be rendered superior to the mortgage lien by the issuing of receiver's certificates and no leave to issue such certificates was granted. In the second case the relators were merely general receivers of the corporation appointed in sequestration proceedings, and there also the taxes were ordered paid out of the current receipts.

The decision in the case of *Central Trust Company* v. *New York City & N. R. R. Co.* (*supra*), which is the principal reliance of the respondent, proceeded on the doctrine of the earlier case of *Matter of Receivership of Columbian Insurance Co.* (3 Abb. Ct. App. Dec. 239, 242), that "the people of this State have succeeded to all the pre-

rogatives of the British Crown, so far as they are essential to the efficient exercise of powers, inherent in the nature of civil government, and that there is the same priority of right here, in respect to the payment of taxes, which existed at common law in favor of the public treasury," which statement of the doctrine is cited with approval by Judge Peckham. But it is equally the settled law that this principle does not render the claim of the state paramount to an existing mortgage. (*U. S.* v. *Hooe,* 3 Cranch, 73; *Thelusson* v. *Smith,* 2 Wheat. 396; *Conard* v. *Atlantic Insurance Co. of N. Y.,* 1 Peters, 386, 441.) In the case of *Savings & Loan Society* v. *Multnomah County* (169 U. S. 421, 428) it is said by Justice Gray, speaking for the Supreme Court of the United States: "This court has always held that a mortgage of real estate, made in good faith by a debtor to secure a private debt, is a conveyance of such an interest in the land, as will defeat the priority given to the United States by act of Congress in the distribution of the debtor's estate."

The judgment appealed from should be reversed and either judgment rendered for the plaintiff, or the proceedings dismissed, without costs to either party.

Chase, J. (concurring with Cullen, Ch. J.). I am of the opinion that the franchise tax was properly imposed and stated, as provided by section 182 of the Tax Law, against said corporation, for the years 1906 and 1907, but that the same was not a lien on the property of the corporation superior to the mortgages. I concur in the opinion of Chief Judge Cullen and the view taken by him is strengthened by a consideration of the provisions of section 201 of the Tax Law, relating to the collection of taxes, which provides, so far as material, as follows, viz.: "After the expiration of thirty days from the sending by the comptroller of a notice of a statement of an account as provided in this article, unless the amount

of such account shall have been paid * * * the comptroller may issue a warrant under his hand and official seal, directed to the sheriff of any county of the state, commanding him to levy upon and sell the real and personal property of the person, partnership, company, association or corporation against which such account is stated, found within his county for the payment of the amount thereof with interest thereon and costs of executing the warrant * * *. Such warrant shall be a lien upon and shall bind the real and personal property of the person, partnership, company, association or corporation against which it is issued, from the time an actual levy shall be made by virtue thereof. The sheriff to whom any such warrant shall be directed shall proceed upon the same in all respects, with like effect, and in the same manner as prescribed by law in respect to executions issued against property upon judgments of a court of record. * * *"

WERNER, HISCOCK and COLLIN, JJ., concur with GRAY, J.; CULLEN, Ch. J., and CHASE, J., read dissenting opinions, and WILLARD BARTLETT, J., concurs.

Judgment affirmed, with costs.