PEOPLE v. LINCH et al. (No. 5980.)

(Supreme Court, Appellate Division, First Department. July 10, 1914.)

1. STREET RAILROADS (§ 55*)—MORTGAGES—FORECLOSURE—TERMS OF SALE—LIABILITY OF PURCHASER.

A decree foreclosing a mortgage on a street railroad and directing its sale subject to all taxes and assessments and liens prior to the lien of the mortgage applied only to taxes which were imposed and were a lien prior to the sale, and did not make the purchaser liable for a tax on the gross earnings of the street railroad corporation while it operated the road which was not imposed and did not become a lien until after his re-sale of the property.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 134; Dec. Dig. § 55.*]

2. TAXATION (§ 508*)—RAILROAD CORPORATIONS—GROSS EARNINGS—WHEN A LIEN.

Tax Law (Consol. Laws, c. 60) § 185, imposes an annual tax of 1 per cent. on the gross earnings of corporations owning or operating any surface railroad not operated by steam. Section 192, subd. 3, requires every such corporation to make a written report of its condition at the close of its business on June 30th preceding, on or before August 1st of each year, stating the amount of its gross earnings. Section 197 provides that the tax shall be due and payable on or before August 1st. Held, that the tax cannot be imposed or become a lien earlier than July 1st or later than August 1st.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 942; Dec. Dig. § 508.*]

3. TAXATION (§ 124½*) — RAILROAD CORPORATIONS — GROSS EARNINGS — LIABILITY.

The purchaser of a street surface railroad at a foreclosure sale and the party to whom he conveyed the railroad were not liable for the tax imposed by Tax Law (Consol. Laws, c. 60) § 185, on the gross earnings of the street railroad corporation while it operated the road prior to the foreclosure sale.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 224–226, 240–242, 260–263, 272; Dec. Dig. § 124½.*]

4. TAXATION (§ 124½*)—RAILROAD CORPORATIONS—GROSS EARNINGS—LIABILITY.

A receiver of a street railroad corporation was not liable for the tax imposed on the gross earnings of the corporation prior to the receivership under Tax Law (Consol. Laws, c. 60) § 185.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 224–226, 240–242, 260–263, 272; Dec. Dig. § 124½.*]

Submission without action upon an agreed statement of facts of a controversy between the People and George W. Linch, as receiver of Central Park, North & East River Railroad Company, and others. Judgment for defendants.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, DOWLING, and HOTCHKISS, JJ.

James J. Barrett, Deputy Atty. Gen., for the People.
Martin Taylor, of New York City, for defendant Linch.
Julien T. Davies, Jr., of New York City, for defendants Cornell and Belt Line R. Corporation.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

DOWLING, J.  The controversy submitted for determination herein involves the liability of the defendants, or any of them, for the franchise taxes aggregating $2,393.38, imposed under sections 185 and 197 of the Tax Law, being 1 per centum upon the gross earnings of the Central Park, North & East River Railroad Company, from June 30, 1912, to November 14, 1912.

[1] The Central Park, North & East River Railroad Company was incorporated July 19, 1860, under the laws of the state of New York, for the purpose of constructing, maintaining, and operating a street surface railroad in the city of New York, and thereafter constructed, maintained, and operated said road, and said road was maintained and operated during all the periods hereinafter referred to.  On July 3, 1908, the Farmers' Loan & Trust Company, as trustee, commenced action in the United States Circuit Court for the Southern District of New York for the foreclosure of a mortgage upon the said railroad, and such proceedings were thereafter had that on February 16, 1911, a decree was duly entered in said action, foreclosing the mortgage and directing that the property specified in the decree be sold by a master commissioner, which decree was thereafter affirmed by the Circuit Court of Appeals of the United States, and a writ of review thereof denied June 10, 1912, by the Supreme Court of the United States. The part of the decree of sale material to the issues involved herein is as follows:

"The said premises and property shall be sold subject to all taxes and assessments and liens prior to the lien of said mortgage to the complainant existing in favor of any person or persons, corporation or corporations, not a party to this. cause; but the purchaser at such sale, his successors and assigns, shall have the right to contest any claim for which priority of lien over the lien of said mortgage upon said premises and property shall be asserted. * * * The purchaser, when the property is struck down to him, and his bid approved by the court, shall at once pay the master commissioner, on account of his purchase, a sufficient sum to make up with his deposit 10 per centum of his accepted bid."

It was further ordered and decreed:

"That within 30 days from the confirmation of said sale, or such further time as the court may allow on application of the purchaser for good cause shown, the purchaser, his successors and assigns, shall complete payment of the entire amount bid to the said master commissioner; and that on such payment the said purchaser, his successors and assigns, shall be entitled to receive a deed of conveyance and bill of sale of the property purchased, from the master commissioner, and from the other parties to this cause as herein provided, and to receive possession of the property so purchased from the parties holding possession of the same."

On November 14, 1912, the property and franchises of the said railroad company were sold under said decree at public auction to Edward Cornell.  On November 30, 1912, in an action brought in the Supreme Court of New York, George W. Linch was appointed temporary receiver of said railroad in a judgment creditor's action, and such receiver took possession and operated the property and franchises of the railroad company from November 30 to December 16, 1912.  On the latter date he was appointed permanent receiver and

operated the said road as such from December 16 to December 23, 1912, on midnight of which latter date he delivered possession to the purchaser at the auction sale, Edward Cornell, who had received the deeds to said property on December 21st. Thereafter, and on March 21, 1913, Cornell sold the property and franchises so bought by him to the Belt Line Railroad Corporation, which entered into possession thereof on the same date, and has since remained therein. In July, 1913, pursuant to the provisions of subdivision 3 of section 192 of the Tax Law, the Central Park, North & East River Railroad Company made its written report to the State Comptroller, stating the amount of its gross earnings from business done for the year ending June 30, 1913, covering the period from July 1, 1912, to November 29, 1912. Linch, as receiver thereof, had made at about the same time his report of the gross earnings of the road during the period of his possession as receiver, from November 30 to December 23, 1912. Based upon such reports, the State Comptroller imposed, settled, and assessed on August 8, 1913, the amount of the franchise tax, which was $2,788 for the first of said periods, and $450.22 for the second of said periods. Thereafter Linch as receiver paid the taxes for the period from November 14 to December 23, 1912, covering the length of time from the date of the sale to Cornell under foreclosure to the date that Cornell took possession.

The taxes due for the period from July 1 to November 14, 1912, remain unpaid, and it is the liability for these taxes which is sought to be settled herein. It is sought to hold the defendant Cornell, the purchaser at the sale, for the taxes for the period long prior to the sale to him, on the ground that under the terms of the foreclosure sale he was bound to pay the taxes. This is because of the construction placed upon the provision of the decree of sale that the property was sold subject to all taxes and assessments and liens prior to the lien of said mortgage. It would seem that under any reasonable construction of this clause it could apply only to such taxes as had been imposed and were a lien prior to the time of the sale.

[2] Under section 185 of the Tax Law, provision is made for an annual tax on any corporation owning or operating any surface railroad not operated by steam for the privilege of exercising its corporate franchise or carrying on its business. Section 192, subd. 3, requires that any such corporation make a written report to the Comptroller of its condition at the close of its business on June 30th preceding, stating the amount of its gross earnings, which report must be made on or before August 1st. Under section 197, the tax shall be due and payable into the state treasury on or before the 1st day of August of each year. It is furthermore provided that such tax shall be a lien upon and bind all the real and personal property of the corporation liable to pay the same from the time when it is payable until the same is paid in full. On reading these sections together, it would seem plain that under no condition can the tax be imposed earlier than July 1st, for this is the first day on which the requirement can be complied with that the report shall state the condition of the company at the

close of business on June 30th, and under no theory could this tax become a lien at an earlier date than July 1st, or at a later date than August 1st. Under no condition therefore could the tax be imposed legally, or become a lien, until after Cornell had sold and delivered possession of the railroad to the Belt Line Company.

In New York Terminal Company v. Gaus, 204 N. Y. 512, 98 N. E. 11, the franchise taxes had been duly levied for the preceding years 1906 and 1907, and were valid liens upon the property at the time it was conveyed to the terminal company. It was for that reason that the purchaser was held bound to pay prior accrued taxes in that case.

In Pennsylvania Steel Company v. New York City Railway Co., 198 Fed. 768, 117 C. C. A. 550, it was held that although, under a similar federal law, taxes and assessments which were liens were not payable by the receivers, the Court of Appeals having held a similar tax under section 182 of the New York Tax Law to be payable by the receivers, they would be liable for the same in the case then before the court. This decision was based on the decision in New York Terminal Company v. Gaus; but we think that the attention of the court was not called to the real purport of that case, in which, as has been pointed out, the liability for prior taxes was established as to such taxes as had been duly assessed and were valid liens upon the property at the time of its conveyance. We do not believe that the Pennsylvania Steel Co. Case is applicable to the situation now before us, or changes the rule laid down in the Terminal Company Case.

[3, 4] The reasons for holding that Cornell is not liable for the payment of these taxes are equally applicable as to the Belt Line Railway Company, which did not acquire title nor take possession until March 21, 1913, long after the period now in question. The defendant Linch, as receiver, was not in possession of the railroad during the time covered by the taxes in question. He has paid so much of the taxes as were assessed for the period of time during which he was in control and operating the road. He has also paid the taxes for the period between the sale under the decree of the federal court and his taking possession. Central Trust Co. of New York v. N. Y. C. & H. R. R. Co., 110 N. Y. 250, 18 N. E. 92, 1 L. R. A. 260, goes only to the extent of holding that where a railroad corporation is insolvent, and its property in the hands of a receiver, who is operating the road, he is liable for franchise taxes assessed against the road during his operation thereof. We are referred to no case that extends his liability to pay taxes beyond such period. The order appointing Linch as receiver is not set forth in the submission of this controversy, nor is it claimed that any special provision thereof obligates him to pay these taxes. Under these conditions, it would seem that none of these defendants is liable for the taxes for the period in question, when the Central Park Railroad was itself in control of and operating its road. There is nothing before us to show the present status of that road, nor is it a party to the submission.

We can go no further than to determine upon the record now before us, and with regard to such parties as join in this submission, that none of these defendants is liable for the taxes for the period in ques-

tion, and judgment is therefore given directing the dismissal of the submission as against them, with costs.

LAUGHLIN, CLARKE, and HOTCHKISS, JJ., concur.

INGRAHAM, P. J. (concurring). Section 197 of the Tax Law expressly provides that the franchise tax shall be a lien upon and bind all the real and personal property of the corporation liable to pay the same from the .time when it is payable until the same is paid in full. Under this provision a tax became a lien upon the corporation assets paramount to all prior undertakings. New York Terminal Co. v. Gaus, 204 N. Y. 512, 98 N. E. 1. Therefore, I think, when the property was acquired by Cornell, it was subject to this tax when imposed and which became a lien upon the property of the railroad whether it remained in its possession or whether its title had been divested. The statute does not make the existence of the lien depend upon the continued ownership of the corporation taxed. The tax is based upon the gross earnings of the corporation during the period in which it exercised its franchise. The tax, when imposed, becomes a lien upon the property of the corporation until it is paid and which can be enforced against such property. But I can find no provision that makes either a purchaser or a receiver in possession of the property of the corporation exercising the franchise personally liable for the tax. Therefore I agree with my Brother DOWLING that there is no obligation upon either of the defendants to pay the tax, and that judgment should be directed for the defendants.