## NORTH RIVER COAL & WHARF CO. v. McWILLIAMS BROS., Inc.

District Court, S. D. New York. April 12, 1929.

No. 441.

See, also, 28 F.(2d) 513.

Mark W. Maclay, of New York City, in pro per.

Kobbe, Thatcher, Frederick & Hoar, of New York City (Karl T. Frederick and Albert H. Ely, Jr., both of New York City, of counsel), for receivers.

Charles H. Tuttle, U. S. Atty., of New York City (Samuel C. Coleman, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Hamilton Ward, Atty. Gen. of State of New York (Wm. M. Brouillard, Deputy Asst. Atty. Gen., of counsel), for state of New York.

Hornblower, Miller & Garrison, of New York City (Frederic G. Bastian, of New York City, of counsel), for New York Trust Co.

Park, Mattison & Lynch, of New York City (Henry E. Mattison, of New York City, of counsel), for trustees McWilliams and Dexheimer.

THACHER, District Judge. The defendant in this suit, brought in equity to procure the appointment of a receiver, was engaged in the business of transporting coal by means of tugs and barges, and was the owner of a fleet of 4 tugboats, 1 stakeboat, and 35 coal barges. It was also the owner of the Hunters Point Dry Docks properties at the mouth of Newtown creek, Long Island City, New York, which were under lease, subject

356

to the lessee's option to purchase. All of the floating equipment was subject to one or more of eight mortgages. Shortly after the appointment of the receivers, numerous applications were made by maritime lienors for permission to file libels in admiralty against the greater part of the fleet.

The petition discloses the activities of the receivers in connection with the admiralty proceedings subsequently commenced in this district and in the Eastern district of New York, which have resulted in the collection of the remnants and surplus proceeds payable to the receivers after satisfying the claims of various libelants. These collections, in so far as they resulted from the sale of vessels subject to mortgage, were deposited in special account, and the mortgagees have appeared in this proceeding claiming the proceeds. The United States government asserts priority under a claim for additional taxes for the years 1917 and 1918 in the sum of $33,663.97, with interest, and also asserts priority under a claim in the principal sum of $516.46 for alleged damage by one of the defendant's tugs to a channel buoy in the harbor of Bridgeport in the year 1926. The state of New York also claims priority for franchise taxes.

The basis of the claim of the United States for priority is found in Revised Statutes, § 3466 (31 USCA § 191). It cannot be doubted that the provisions of this statute extend to taxes owing by the defendant to the United States, in view of its consent to the appointment of receivers herein and its apparent insolvency. Price v. United States, 269 U. S. 492, 46 S. Ct. 180, 70 L. Ed. 373; United States v. Butterworth-Judson Corp., 269 U. S. 504, 46 S. Ct. 179, 70 L. Ed. 380. But it is equally clear that this statute grants no priority over a valid mortgage. Conard v. Atlantic Ins. Co., 1 Pet. 386, 7 L. Ed. 189; Schmidtman v. Atlantic Phosphate & Oil Corp., 230 F. 769 (C. C. A. 2). With respect to the mortgagees, priority of the government claims is therefore denied.

The basis for the claim of the state of New York for priority is found in section 197 of the Tax Law of this state (Consol. Laws, c. 60). Franchise taxes imposed by section 182 of the Tax Law of this state become liens and are binding upon the real and personal property of a corporation until paid in full. Engelhardt v. Alvino Realty Co., 248 N. Y. 374, 162 N. E. 287; Carey v. Minor C. Keith, Inc., 250 N. Y. 216, 164 N. E. 912. The tax lien thus created takes priority over pre-existing liens and incumbrances on the corporate property. New York Terminal Co. v. Gaus, 204 N. Y. 512, 98 N. E. 11; Marshall v. N. Y., 254 U. S. 380, 384, 41 S. Ct. 143 (65 L. Ed. 315); In re Century Steel Co., 17 F.(2d) 78 (C. C. A. 2); Seaboard Nat. Bank v. Rogers Milk Products Co., 21 F.(2d) 414 (C. C. A. 2). In 1925 the statute was amended, so as to destroy priority of the tax lien over pre-existing mortgages on real estate, no mention being made of chattel mortgages upon personal property. The mortgagees here, claiming under chattel mortgages, insist that the only lien created by the statute is in terms imposed "upon the real and personal property of the corporation" (Tax Law, § 197), and that before and at all times since the taxes were imposed they, as mortgagees, have held the legal title to personal property covered by chattel mortgages, and that therefore their interest in the personal property securing their indebtedness never became subject to any tax lien. Unlike a mortgage on real estate, which in this state is merely an incumbrance or lien upon the land, a chattel mortgage is a present transfer of the legal title to the mortgaged property, defeasible upon payment of the debt it is given to secure. Barrett Mfg. Co. v. Van Ronk, 212 N. Y. 90, 105 N. E. 811.

This being the settled law of this state I see no escape from the conclusion that a lien attaching to the property of the corporate mortgagor could only attach to the equity of redemption, and must therefore be subordinate, in so far as the property conveyed to the mortgagee is concerned, to the payment of the mortgage.

I should have no doubt of this were it not for the decision of the Court of Appeals in N. Y. Terminal Co. v. Gaus, supra. There the mortgage in question covered both real and personal property, and in the opinion no distinction was made between the two. If the real estate, consisting of ferry terminals, etc., was of sufficient value to satisfy the tax claims, the distinction was, of course, of no importance. That it was ignored by the court seems clear, because the opinion states that during the receivership title to the property remained in the mortgagor—a statement entirely accurate with reference to the real estate, but not so with reference to personal property covered by a chattel mortgage. It must therefore be assumed that the court was not confronted with the necessity of considering the distinction between a real estate mortgage, which is merely a lien or incumbrance, and a chattel mortgage,

which is a conveyance of the mortgagor's title to the mortgagee. The question here presented was not raised in the Gaus Case, and should not be regarded as having been there decided.

No other authorities upon the precise point have been called to my attention, and I therefore conclude that the indebtedness of the chattel mortgagees takes priority over the tax claims of the state of New York.

In determining the allowances to the receivers and their counsel, in determining procedure for the payment of claims of bondholders, and in determining the form of the order to be entered at this time disposing of the other matters raised by the receivers' petition, the court desires to hear the receivers and counsel who appeared upon the argument of this petition, at which time the form of the order to be entered in accordance with the prayer of the petition will be considered. This matter may be brought on in chambers on two days' notice.