MARGARITA BERTRÁN DE PICARDO ET AL., Plaintiffs and Appellants, v. MANUEL V. DOMENECH, TREASURER OF PUERTO RICO, Defendant and Appellee.

No. 6611. Argued May 8, 1935.—Decided June 28, 1935.

*González Fagundo & González, Jr.,* for appellants. *Benjamin J. Horton, Attorney General,* and *R. Cordovés Arana, Assistant Attorney General* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

This is an action for the recovery of taxes paid under protest. It was commenced through a complaint filed in the District Court of Humacao on November 11, 1931. Motions to strike out were presented by the defendant, and a second amended complaint was filed on March 11, 1932.

Therein it is substantially alleged that Diego Zalduondo, owner of several rural properties, mortgaged them to the plaintiffs to secure a debt of twenty thousand dollars, by a deed of March 5, 1927, which was presented in the Registry of Property of Humacao on March 9, 1927, and was recorded on April 6, 1927; that the debt was not paid at maturity, and on February 21, 1931, the plaintiffs, in order to collect it, instituted a summary foreclosure proceeding wherein it was finally ordered that the mortgaged properties be sold at a public auction, which took place on July 5, 1931, the properties being awarded to the plaintiffs in partial payment of their claim; that on March 5, 1927, the mortgaged properties did not appear in the register as affected by any lien whatever in favor of the People of Puerto Rico, but that when the plaintiffs acquired them on July 5, 1931, they found the same attached by the People to answer for delinquent taxes amounting to $1,767.57 that had been levied upon them, and, in addition, for $1,744.30, of which $530.45 was for income taxes for the year of 1925, and the rest for workmen's insurance premiums for the years 1926–27 to 1929–30; that in order to avoid attachment proceedings and the sale of the properties which they had acquired, they paid the land tax without protest, and the others under protest; that when the latter taxes were levied on Zalduondo, they owned sufficient personal property to pay them, but the Department of Finance took no step whatever to collect them by attaching

said personal property; that when the mortgage constituted by Zalduondo in favor of the plaintiffs was recorded, no record whatever of an attachment in favor of The People appeared in the register; that the attachment was levied on October 1, 1930, although Zalduondo owned other property, for the purpose of forcing the plaintiffs to release the properties from the attachment by paying the amount thereof when they acquired the properties, that since before 1926 no insured workmen worked on the properties in question, and that said properties were answerable to The People for only the land taxes for the last three years.

The defendant demurred to and answered the complaint. He alleged, in short, that The People was entitled to all the taxes in question.

The case went to trial. Both parties introduced evidence, and on April 29, 1933, the court rendered judgment for the defendant, without special imposition of costs.

The plaintiffs appealed, filing the transcript on February 8, 1934, and their brief on the following June 1. The hearing of the appeal was set for May 8, 1935, on which date it took place, the case being definitely submitted for our consideration and decision.

The appellants in their brief assign three errors committed, as they claim, by the trial court in deciding that the evidence of the plaintiffs was not sufficient to destroy the presumption that the defendant had complied with the law by first attaching Zalduondo's personal property in order to collect the tax; in holding that the income tax constituted a lien having preference over the plaintiffs' mortgage lien; and in deciding that the workmen's insurance premiums likewise had preference over the mortgage.

■ Let us examine the first assignment of error. It involves a question of fact. In deciding the same, the trial court, in its statement of the case and opinion, expresses itself as follows:

"The court heard the ev'dence presented by the plaintiffs in regard to the delinquent taxpayer's ownership of certain unencumbered personal property by whose sale the taxes, other than the land taxes, owed by him, could have been collected, and, after weighing said evidence, the court finds that the same is not sufficient to fully overcome, the existing presumption that the Treasurer of Puerto Rico, through his agents, fulfilled his legal duty and searched for the corresponding property belonging to Diego Zalduondo in order to sell it, but did not find it as Zalduondo did not own any under any title, the evidence presented for the purpose by the plaintiffs not being sufficient to convince the court that said property really existed under the conditions alleged by the plaintiffs."

We have read the testimony of Diego Zalduondo, which is the only evidence produced by the plaintiffs in regard to this point. He states, indeed, that he owned oxen, horses, carts, and other property at the time the taxes in question were due, which, according to their value as estimated by him, would have been sufficient to satisfy his debt without the necessity of resorting to the attachment of his real property, but it appears that the trial judge did not give full credence to such statements.

The documentary evidence introduced by the defendant and admitted without objection on the part of the plaintiffs shows that the collection of the tax was ordered to be made by the attachment and sale of Zalduondo's personal property, and that formal demand was made upon him to disclose the same; as he failed to do so, search was made for it with a negative result, and it was then that his real property was attached.

When Zalduondo was asked by the defendant in regard to the formal demand, he answered that he did not remember whether or not any internal revenue agent made a formal demand upon him to state what personal property he had: an answer which, under the attendant circumstances, could be considered as evasive.

We do not think that it can be concluded from the record, that the trial court erred in holding the plaintiffs' evidence

insufficient. In our view, it was not clearly shown that there existed personal property belonging to the debtor, suitable and sufficient to satisfy the debt; nor that the attachment of the real property of the debtor was levied "for the purpose of forcing the plaintiffs to release the properties from the attachment by paying the amount thereof when they acquired the properties," as alleged in the complaint.

It is maintained that the conclusion of the trial court was erroneous because it was based on a nonexistent presumption. Indeed, said court stated in what we have just transcribed of its statement of the case and opinion, that the presumption that the Treasurer, through his agents, had fulfilled his duty was not destroyed. But the court had said before, that it had "previously weighed" the evidence presented by the plaintiffs.

Subdivision 15, section 102 of the Law of Evidence (sec. 464 of the Code of Civil Procedure, 1933 ed.), establishes as a disputable presumption that official duty had been regularly performed. Here the presumption was disputed by the allegations and the evidence already mentioned, and it was then that the defendant official presented his documentary evidence. The final opinion of the court was formed after a consideration of all the evidence adduced by the parties. If the court had given full credence to the testimony of Zalduondo, it might have arrived at a different conclusion, but after carefully weighing said testimony, the court did not consider it sufficiently strong to overcome the presumption that the Treasurer, through his agents, fulfilled his duty in levying the attachment on real property of the debtor after having formally requested him to designate personal property, which could not be found; a presumption that not only arises from the law but was strengthened by the statements contained in the documentary evidence of the defendant. See the case of *United States* v. *Carr*, 132 U.S. 644, 653.

Of course, the presentation of documents in which it is set forth by certificate of the public officials themselves that they performed certain acts is not an impregnable fortress. It can be attacked and destroyed, and the Government should be alert and go to trial well prepared to show with other evidence, if necessary, that such acts were really performed. What happens here, we repeat, is that the evidence offered by the plaintiffs did not merit the court's full credence and is really deficient.

 Was the second error committed? Let us see.

The appellants do not challenge the legality of the income tax. They only maintain that as it was published on July 29, 1930, in the office of the internal revenue collector of Fajardo—that is, subsequent not only to the constitution (March 6, 1927) but also to the maturity (March 5, 1930) of the mortgage, said tax is not a preferred lien over the mortgage, according to the very statute invoked by the defendant; that is, section 83 of Act No. 74 of 1925 (Session Laws, p. 400), which reads thus:

"Section 83.—The taxes imposed by this Act, and penalties, surcharges and interest, shall in all cases constitute a first lien in favor of The People of Porto Rico on the real and personal property and chattels real of the taxpayer, from and after the date of the publication of such taxes in the office of the collector of internal revenue of the respective municipality, and such taxes shall be collected by the Treasurer of Porto Rico in the same manner and through the same summary proceedings provided by existing law for the collection of property taxes."

We do not agree. The English text of the statute, which must prevail as it is an almost literal copy of the Federal Law of 1924 in regard to the matter (*Calaf* v. *Gallardo,* 36 P.R.R. 131), instead of "*crédito preferente*" uses the term "first lien," which has a broader meaning.

When the mortgage was foreclosed, the first lien in favor of The People had already been duly posted, and as this was done by virtue of an act that had been in force prior to the

constitution of the mortgage, it can not be maintained that it interfered with the obligations arising from that contract. Consequently, there must be considered as fully applicable the case of *Provident Institution* v. *Jersey City*, 113 U.S. 506, 514, 515, in which the Supreme Court of the United States, speaking through Mr. Justice Bradley, said:

"What may be the effect of those statutes, in this regard, upon mortgages which were created prior to the statute of 1852, it is unnecessary at present to inquire. The mortgages of the complainant were not created prior to that statute, but long subsequent thereto. When the complainant took its mortgages, it knew what the law was; it knew that, by the law, if the mortgaged lot should be supplied with Passaic water by the city authorities, the rent of that water, as regulated and exacted by them, would be a first lien on the lot. It chose to take its mortgages subject to this law; and it is idle to contend that a postponement of its lien to that of the water rents, whether after accruing or not, is a deprivation of its property without due procees of law. Its own voluntary act, its own consent, is an element in the transaction. The cases referred to by counsel to the contrary, holding void a consent exacted contrary to the Constitution, have no bearing upon the present cases."

In the argument under this assignment, a new question is raised. The appellants invoke in their favor Act No. 14, of August 24, 1933 (Session Laws (2), p. 76), sections 1, 3, and 5 of which provide:

"Section 1.—With the exception of the taxes on the encumbered property for three years and for the current year, mortgage credits and crop loans are hereby declared to be liens having preference over any other charge or lien for taxes or for any other cause.

"Section 3.—It is hereby declared that this Act shall have, and has, a retroactive effect as regards charges and liens for taxes due, other than property taxes, and to which, in accordance with the provisions of laws prior hereto, there has been given the character of a preferred lien.

"Section 5.—The taxes levied by the Income Tax Law of 1924 and the quotas for workmen's compensation, their penalties, surcharges and interest, shall be collected by the Treasurer of Puerto Rico through the same attachment proceedings as those established by law for the collection of property taxes, but the attachment made

on real property and real rights shall have preference only from the date of its registration in the registry, and solely over liens and charges subsequent to said date. The registrar of property, on receiving the notice of the embargo, shall make a note thereof on the margin or at the foot of the registrations of the properties or real rights of the taxpayer. The Treasurer of Puerto Rico, by himself or through his employees, shall apply to the proper registry of property for the notation of the corresponding attachment on the real property or real rights appearing in favor of the debtor, as soon as such tax has been levied; *Provided*, That if The People of Puerto Rico is awarded, for the collection of this tax and the surcharges thereon, a property subject to a prior lien, the owner of such lien may execute it against the said property, making The People of Puerto Rico the party defendant in the proceeding followed, for which The People of Puerto Rico grants its consent.''

The appellants contend that that act, even though approved subsequent to the filing of their complaint and to the payment of the tax under protest, is applicable to them and clearly decides in their favor the question involved in the suit.

We do not agree to that contention, either. The retroactive operation of that act, as the appellee says, refers to taxes that were due at the time the act took effect, not to those that had already been paid or were in litigation.

The judgment in the case at bar was rendered on April 29, 1933, based on an opinion wherein it was declared that the taxes involved, paid under protest on September 5, 1931, were liens having preference over the mortgage in question, and the acknowledged right of The People must not be affected by the retroactive operation of the act, because that would be equivalent to a reversal by legislative action of a judgment of a district court: a function that belongs to this Supreme Court on appeal.

In the case of *Charles Baumbach Co.* v. *Singer,* 86 Wis. 329, 56 N.W. 873, it was said:

''The respondent is a judgment creditor of the firm of Schwartz & Co., and sued out garnishee process against Singer, who is the as-

signee of said firm, under a voluntary assignment. It appeared, without dispute, that the court commissioner who took the bond of the assignee failed to indorse thereon his approval thereof. Upon this ground, the trial court held the assignment void, and the garnishee liable. This exact question was decided in *Shakman* v. *Schlueter*, 77 Wis. 402, 46 N. W. Rep. 542; and, upon the reasoning and authority of that case, it is apparent that the judgment of the trial court was right.

"After the judgment in this case, chapter 276, Laws 1893, was passed, which, referring to such bonds, attempts to provide that 'all bonds heretofore taken and filed . . . by said court commissioner are hereby declared to be sufficiently approved and valid.' This act cannot affect the judgment in this case. 'Legislative action cannot be made to retroact on past controversies, and to reverse decisions which the court, in the exercise of their undoubted authority, have made, for this would be the exercise of judicial power.' Cooley, Const. Lim. (6th Ed.) p. 112. Judgment of the superior court affirmed."

Under the state of the law at the time the payment under protest was made and the judgment appealed from was rendered, the appellants owed the tax, and therefore they were not entitled to resort to the action brought by them. The Legislature could not have intended to create a right based on a past transaction, especially there existing a judgment in favor of one of the parties which would be prejudiced by giving the act a retroactive effect.

The question asked must therefore be answered in the negative: the second error assigned was not committed. Nor the third.

■ In support of their contention that the workmen's insurance premiums should not be collected with preference over their mortgage credit, the appellants invoke the holding of the U. S. Circuit Court of Appeals for the First Circuit in the case of *Domenech* v. *Lee*, 66 F. (2d) 31, thus:

"The next taxes concern the premiums assessed for the Workmen's Relief Commission for the fiscal years 1928–29 to 1930–31, inclusive, including surcharges, amounting in all to $4,501.86. In section 38 of the Laws of Porto Rico (Act No. 85) approved May 14, 1928, it is provided:

" 'Section 38. The Treasurer of Porto Rico is hereby empowered, authorized and directed to levy, assess, and collect, semi-annually and in advance, from every employer of workmen subject to this Act, such annual premiums as may be determined in accordance with the preceding section, on the total amount of wages paid by said· employer to workmen who were or would have been entitled to the benefits of this Act during the year prior or the levying of premiums, if the same had been in force; . . .

" 'The assessments shall be made as soon as the duplicate report referred to in Section 40 is received in the office of the Superintendent of Insurance, taking as a basis therefor the total amount paid for wages of workmen employed by each employer during the previous year who were or would have been entitled to the benefits of this Act if the same had been in force. Should an employer fail to pay the total amount legally assessed against him within the time fixed by the Treasurer, he shall be allowed thirty days' grace, and if on the expiration of this term he has still failed to pay, the Treasurer of Porto Rico, without excuse or delay, shall levy an attachment on any property of the employer and shall proceed to collect the assessment due as in the case of collection of property taxes; Provided, That the Treasurer of Porto Rico may collect surcharges for every month or fraction thereof during which such assessments remain unpaid, at the rate of one per cent a month; And Provided, further, That the Treasurer of Porto Rico is hereby empowered to utilize the services of the officers and employees of the Commission to aid him in collecting the assessments and in prosecuting such attachments, as may be proper.'

"Section 40, after making it the duty of every employer of workmen entitled to the benefits of the act to file a duplicate statement under oath showing the number of workmen employed and the total amount of wages paid said workmen during the preceding fiscal year or evidence that such employer is insured in any of the forms authorized by the act, provides that the premiums or taxes on the total amount of wages prescribed in section 37 and 38 of the act shall be computed, and, in the second paragraph, provides:

" 'Collection of these premiums shall have preference over any other obligation of the employer, and such premiums shall constitute a lien on the property of the employer, just as soon as the same shall be left unpaid upon service of notice to pay, with the same priority as granted insurance premiums due to insurers under the Civil Code.'

"By section 55 the amounts existing in the workmen's relief trust fund, created by section 1 of a similar Act approved April 13, 1916, were appropriated to the carrying out of the provisions of this act, and by section 57 all laws or parts of laws in conflict with the act were repealed.

"The Act of 1916 (Laws 1916, No. 19) was in many respects similar to the Act of 1928. However, instead of levying the premiums or taxes semiannually, based on the total amount of wages, it levied them annually, and the last paragraph of section 14 provided:

" 'Should the employer fail to pay the premiums legally levied on him the Treasurer of Porto Rico shall order the attachment of property of said employer, and shall proceed to sell the same at auction in accordance with the procedure established by the act to secure and collect due and unpaid taxes on property.'

"In this respect the provisions of the last quoted clause of the Act of 1916 are substantially like those in the last-quoted clause of section 38 of the Act of 1928. But the Act of 1916 contained no such provision as is contained in the last clause of section 40 of the Act of 1928, making the premiums or taxes a preference over every other obligation of the employer and constituting them a lien on the property of the employer with the same priority as is granted insurance premiums due the insurer under the Civil Code (see section 1824).

"The paragraph above quoted in section 40 of the Act of 1928 constituting such premiums or taxes a lien and giving them the same priority as granted insurance premiums due the insurer under the Civil Code (section 1824), which the treasurer contends gives them priority over a mortgage lien, was not enacted until May 14, 1928, some two years after the mortgage lien here in question was given. This being the case, we are of the opinion that this provision of the act is not to be construed as giving a prior and superior lien over the intervener's mortgage upon the real estate, for to give it that effect would be to impair the obligations of the contract created by the mortgage given to the George L. Squier Manufacturing Company in 1926. Organic Act of Porto Rico, section 2, par. 5 (48 USCA section 737, par. 5.) The people of Puerto Rico, therefore, had no lien prior and superior to the mortgage on the real estate for the collection of these premiums or taxes.

"We do not regard the doctrine applied in the case of *New York Terminal Co.* v. *Gaus,* 204 N. Y. 512, 98 N. E. 11, as applicable. There it was held that the state of New York, by virtue of a statute giving it a lien for the payment of franchise taxes and by virtue of

its sovereignty under the common law, had a lien prior and paramount to other incumbrances previously given on the property of the taxpayer. The Act of Puerto Rico of 1916, in force when the mortgage was given in 1926, did not give a lien upon real estate, as did the New York statute, and there is nothing here to show that, under the civil law, the people of Puerto Rico, by virtue of sovereignty, is given any prior and paramount right over that of other creditors, much less over a prior mortgage creditor. Indeed it is pointed out in *Marshall* v. *New York,* 254 U. S. 380, 41 S. Ct. 143, 65 L. Ed. 315, that under the common law of New York as inherited from Great Britain, the state, by virtue of its sovereignty, would not have priority as against a previously existing incumbrance in the absence of a statute giving a lien.''

The opinion of the Circuit Court was based on Act No. 19 of 1916 (Session Laws, p. 51) as being the only one in force when the mortgage was constituted, and if that were really so, we would have to admit the existence of the third error assigned. But Act No. 19 of 1916 was repealed by Act No. 10 of 1918 (Session Laws, p. 54) which, as amended by Act No. 102 of 1925 (Session Laws, p. 904), contains at the end of its section 13, a provision reading as follows:

''Collection of these premiums shall have preference over any other obligation of the employer and such premiums shall constitute a lien on the property of the employer as soon as the same shall be left unpaid upon service of notice to pay.''

If the attention of the Circuit Court had been called to the above legal provision, it would, according to its own reasoning, have surely reached a different conclusion.

In this particular case that we are studying and deciding, the workmen's insurance premiums of Zalduondo for the fiscal years 1926–27 and 1927–28 were levied in accordance with Act No. 10 of 1918, as amended by Act No. 102 of 1925, and the notice to pay was served on September 28, 1927, such premiums constituting from that time a lien on the property of the employer, with preference over any other debt theretofore or thereafter contracted, but subsequent, of

course, to the year 1925, and consequently with preference over the appellants' mortgage which was constituted in 1927.

The other premiums—those for the fiscal years 1928–29 1929–30—were levied under Act No. 85 of 1928 (Session Laws, p. 630), and the notices to pay were served on March 11, 1929, and March 25, 1930, respectively. The section of the act of 1928 that corresponds to section 13 of the act of 1918, amended in 1925, is section 40, the pertinent part of which says:

"Collection of these premiums shall have preference over any other obligation of the employer, and such premiums shall constitute a lien on the property of the employer, just as soon as the same shall be left unpaid upon service of notice to pay, with the same priority as granted insurance premiums due to insurers under the Civil Code."

The act is clear, and although it was approved after the appellants' mortgage was constituted, it does not impair the mortgage contract, as, when said contract was entered into, there was in force another similar statute which had to be taken into consideration by the contracting parties.

The judgment appealed from must be affirmed.