THE CENTRAL TRUST COMPANY *v.* THE NEW YORK CITY AND NORTHERN RAILROAD COMPANY.

In the Matter of the Petition of the ATTORNEY GENERAL.

Where a railroad corporation is insolvent and all its property is in the hands of a receiver appointed in an action to foreclose a mortgage thereon, the amount of which exceeds the value of all the property, and the receiver as such is operating the road under order of the court, and has in his hands moneys arising from the gross earnings sufficient to pay a tax imposed upon the corporation under and pursuant to the corporation act of 1881 (Chap. 361, Laws of 1881), the state is not confined to the proceedings prescribed in said act to collect such tax, but the court, on petition and application of the attorney general, made in the foreclosure suit, and on notice to the corporation and to the receiver may, in its discretion. make an order directing the receiver to pay the same out of said gross earnings.

The claim of the state for the payment of such a tax is a paramount one.

*Commonwealth* v. *L. S. Bank* (123 Mass. 493);  *U. T. Co.* v. *R. R. Co.* (117
U. S. 434) distinguished;
*C. T. Co.* v. *N. Y. C. & N. R. R. Co.* (47 Hun, 587) reversed.

(Argued June 19, 1888; decided October 2, 1888.)

APPEAL from order of the General Term of the Supreme
Court in the first judicial department, made on the first Mon-
day of January, 1888, which reversed an order of Special
Term granting an application by the comptroller of the state,
through the attorney-general, for an order directing the
receiver of the New York City & Northern Railroad Com-
pany to pay certain state taxes and to issue certificates therefor.
(Reported below, 47 Hun, 587.)

The nature of the proceeding and the facts are sufficiently
stated in the opinion.

*Charles F. Tabor*, attorney general, for appellant.   The act
under which the taxes herein sought to be collected were
imposed upon the railroad corporation is constitutional.
(*People* v. *Home Ins. Co.*, 92 N. Y. 328; 119 U. S. 129.)
A debt due to the state whether a lien upon property or not,
is entitled to priority of payment over claims of individuals,
even though the latter are secured by a direct lien upon the
property out of which the respective claims of the state are
sought to be collected.   (*Giles* v. *Grover*, 9 Bing. 128;
*Bogardus* v. *Trinity Church*, 4 Paige, 178, 198; *In re
Receivership Columbian Ins. Co.*, 3 Abb. Dec. 239.)   The
taxes for the last four years upon the gross earnings of the
New York City and Northern Railroad Company are under a
clear implication of the statutes liens upon its property, and
must be paid before the mortgage debt.   (2 R. S. [Bank's
7th ed.] 1038, §§ 16, 23; *Barlow* v. *St. Nicholas Bk.*, 63
N. Y. 399.)   Even if the taxes be not strict legal liens upon
the property of the corporation, they are such equitable liens
as should properly be paid by the receiver before the mortgage
debt.   (*Raht* v. *Atrill*, 106 N. Y. 426, 435; *Regent's Can.
Iron Works Co.*, L. R. Ch. Div. 411, § 27; *Barton* v. *Barbour*,
104 U. S. 126–135; Const., art. 8, § 1; R. S. § 8, tit. 3, chap.

18, part 1, 1531; *People ex rel. Kimball* v. *B. & A. R. R. Co.,* 70 N. Y. 569; *People* v. *Home Ins. Co.,* 92 id. 328, 347.) The proceeding defined by the act of 1857, chapter 536, is a special proceeding. (Code of Civil Pro., §§ 3333, 3334; *People* v. *City of Rochester,* 96 N. Y. 32.) The practical effect of a receivership is to suspend all statutory remedies for the collection of debts against received estates, except in so far as the court appointing the receiver allows the statute to be executed. (*Walling* v. *Miller,* 15 N. E. Rep. 65; *Bank* v. *Schermerhorn,* 10 Paige, 263; *Wiswall* v. *Sampson,* 14 How. 52.) So long as the corporation is in existence and its franchise survive, it is subject to the imposition of these taxes. The impost primarily is a franchise tax. (*People* v. *Home Ins. Co.,* 92 N. Y. 328; *People* v. *A. Ins. Co.,* 92 id. 458.)

*Artemas H. Holmes* for respondents. The taxes are franchise taxes, as distinguished from property taxes, and are imposed upon the corporate franchise of the company and not upon its property. (Laws of 1880, chap. 542, as amended by chapter 361 of the Laws of 1881; *People* v. *Home Ins. Co.,* 92 N. Y. 328; *Same* v. *Albany Ins. Co.,* Id. 458; *Same* v. *Equitable Co.,* 96 id. 387; *Same* v. *Gold, etc., Co.,* 98 id. 67.) Franchise taxes are distinguished from property taxes in the method of levy, assessment, collection and payment, and in respect of their penalties. Franchise taxes are personal in their nature and their normal penalty is the forfeiture of the franchise. (*Provident Ins. Co.* v. *Mass.,* 6 Wall. 611; *Belleville Nail Co.* v. *People,* 98 Ill. 399; *Comm.* v. *Lancaster Sav. Bank,* 123 Mass. 495.) Franchise taxes are not a lien upon property, except by express statutory provision. (2 Dillon on Munic. Corp. §§ 821 [659]; *Thomkins* v. *Little Rock R. R. Co.,* 18 Fed. Rep. 344, 348.) Statutes providing for taxation must receive a strict and literal construction. No penalties must be imposed upon the public which are not clearly within the intention and purpose of the legislature. (Cooley on Taxation, 266, 267; Dwarris on Stats. 743; *U. S.* v. *Wigglesworth,* 2 Story, 369, 373.) It being established that the

franchise taxes are not a lien upon the company's property, or a paramount charge upon the trust funds in the hands of the receiver, the court cannot give them precedence over the lien of the mortgage, either on the ground that they are debts due the state or on the ground of public policy, or for any other reason. (*Raht* v. *Attrill*, 106 N. Y. 423; *Vilas* v. *Page*, Id. 439; *Met. Trust Co.* v. *Tonawanda, etc., Co.*, 103 id. 245; Cooley on Taxation, 15; 1 Desty on Taxation, 9; 2 id. 741, 742; 2 Rorer on Railroads, 1473; *Gormley's Appeal*, 27 Penn. 49; *March* v. *Bird*, 22 Fed. Rep. 180; *Finn* v. *Haynes*, 37 Mich. 65.) The appointment of the receiver did not deprive the corporation of its franchise or make him liable, as receiver, for the payment of a franchise tax. (*Union Trust Co.* v. *Ill. Co.*, 117 U. S. 434, 438; *Ellis* v. *Boston R. R. Co.*, 107 Mass. 1, 28.)

PECKHAM, J.  The railroad company, above named, was incorporated under the laws of this state and had its principal business office in the city of New York. In May, 1882, a receiver thereof was appointed in proceedings taken to sequestrate its property by a judgment-creditor whose execution had been returned unsatisfied. Such receiver operated the road from the time of his appointment to February 3, 1885, when another receiver was appointed in the action above entitled, which is brought to foreclose certain mortgages executed by the company upon its property. The first receiver turned over the property and the possession of the road to the receiver appointed in the foreclosure proceedings, and from the time of the appointment of the latter up to a time subsequent to the year ending June 30, 1886, he operated the road by virtue of such appointment. Taxes became due and payable under the corporation tax act of 1880, as amended by chapter 361 of the Laws of 1881, which amounted, at the time of the filing of his petition by the attorney general in February, 1887, to about the sum of $8,000, being for taxes on the gross earnings of the road, as thus operated for the years ending June 30, 1883, 1884, 1885 and 1886, respectively. No question is

made as to the amount of the tax in each year or that there is a sum in the hands of the receiver which may be applicable to their payment; but the counsel for the receiver insists that the corporation is alone answerable for the taxes, and that recourse must be had to it for the payment of the same, or to such funds as may remain in the receiver's hands after the claims of the mortgagees have been satisfied, which in this case is but another manner of stating that there is no way of collecting these taxes, for if their payment is to be postponed to the payment of the whole amount of the mortgage debt of the company all of its property will have been wholly exhausted long before payment in full of its mortgage indebtedness could be made. Various other objections were taken to the granting of the petition of the attorney general.

The taxes in question having been levied by virtue of the above-mentioned corporation tax law, were taxes upon the franchise as distinguished from the property of the corporation. (*People, etc.,* v. *Home Ins. Co.,* 92 N. Y. 328.) Upon this assumption, the counsel for the receiver claims that the taxes are not made a lien upon property by the act creating them and cannot, therefore, be held to be a prior or paramount charge upon the funds in the receiver's hands, on the ground that they are debts due to the state, or on the ground of public policy.

The manner of proceeding to collect these taxes has been designated in the act which imposes them, and is to be found in sections 7 and 9 of such act. By section 7 the tax "shall be collected for the use of the state as other taxes are recoverable by law from such corporation," etc., and by section 9 the taxes "may be sued for in the name of the People of the state and recovered in any court of competent jurisdiction in an action to be brought by the attorney general at the instance of the comptroller." Under section 7, the proceedings to collect the taxes being the same as other taxes are recovered by law (not relating to those imposed on real estate), those proceedings would be regulated by the Revised Statutes, as amended by chapter 456 of the Laws of 1857. It is argued that as proceedings to enforce the collection of taxes thus imposed are provided for

in the very act which imposes them, such proceedings must in all cases be taken and that all other remedies are absolutely excluded. It is upon this ground that the learned judge who wrote the opinion at the General Term proceeded, the result of which was to reverse these proceedings because not undertaken pursuant to the provision of the statute in question. Generally speaking, the rule as thus laid down is to be followed, and the remedy is confined in the manner stated. But in such a case as this we think the rule is not to be applied. When the property of a corporation is already sequestrated and a receiver appointed, and where, in addition thereto, foreclosure proceedings are pending against it to foreclose mortgages to an amount in excess of all its property, and a receiver has also been appointed under such proceedings, and where the corporation is largely and hopelessly insolvent and all its property in the hands of the receiver appointed by the court, and where the money to pay the taxes has arisen from the gross earnings, and an amount sufficient to pay them is in the hands of the receiver, we are of opinion that the proceedings to obtain payment of those taxes thus in the receiver's hands are not confined to those provided for by the act cited, but that a direct application for an order on the receiver for their payment may be made to the court by petition as in this case, having made the corporation and the receiver a party thereto. If there are any disputed questions of fact to be determined, the court may direct an action to be brought, or may determine it in some other and more summary way.

We feel more certain in regard to this question by looking at the proceedings which are provided to be taken under the general laws. They are to be instituted by petition upon which the court may sequestrate such part of the property of the company as shall be necessary for the purpose of satisfying the taxes in arrear, with the cost, etc., and in its discretion the court may proceed further and enjoin the company and its officers from any further proceedings under the charter in order to enforce the payment of the taxes. But in a case where the whole of the property has already been sequestrated under

other proceedings, the sequestration provided for would not be very efficient. Neither would an injunction which simply enjoined the company and its officers from further proceedings under the charter be in and of itself very efficient as against a receiver who was operating the railroad under the order of the court. In such case, if the injunction were granted, it would only become effective because the court would then order its officer, the receiver, to pay the tax and go on with the operation of the road. But it would be a farce for the court to first issue the injunction against the receiver restraining him from operating the road until he paid the tax, and then order him to pay it for the purpose of continuing its proper operation. The result would be that the receiver in the end would pay the tax because he was ordered to do so by the court. The order might just as well be issued in the first instance without this circuitous method.

The privilege granted by the other section of the act of 1881, to sue for the taxes in the name of the People, in an action brought by the attorney general at the instance of the comptroller, would also result in the court ordering the receiver to pay the tax, for in no other way could the judgment for the recovery of the tax become effectual. In all cases, therefore the payment by the receiver would be made by order of the court, and in all cases the order might just as well be made in the first instance.

We do not think that these provisions of the statute should under such circumstances, be held to restrict the general power of the court to direct its officer to pay those claims which exist in favor of the state for taxes imposed upon the corporation, where the claim of the state for the payment of such tax is, as we think, a paramount one.

An insolvent corporation in the hands of and operated by a receiver was not in the minds of the framers of the statute when providing for the enforcement of payment of taxes from what may be termed a going corporation. It may be admitted that, in a strict and technical sense, these taxes, when first imposed, are not a lien upon any specific property of the

corporation.  But we are of the opinion that the railroad when in the receiver's hands and operated by him, is operated under and by virtue of the franchise which has been conferred upon the corporation by the state, and that when he receives the gross earnings arising from its operation and has in his hands money enough to pay these taxes, the state has a paramount right to collect them before the moneys applicable to such payment shall be paid away by the receiver.  Having such paramount right, the court may, in its discretion, listen to the petition of the state, through its attorney general, and direct its officer to make the payment asked for.  It is claimed, however, that when a receiver is appointed by the court, if he operates the railroad under its order he does so by virtue of the equity powers of the court conferred by the Constitution, and hence that the receiver is not bound to pay the taxes, although he receives all the earnings of the company.  But what does the receiver operate ?  Under this order of the court he takes possession of all the property of the corporation and proceeds to operate, that is, to run its trains and to do all that was formerly done under the direction of the board of directors.  In this way he uses the franchise which has been conferred by the state upon the company, and he uses it as an officer of the court which is administering the affairs of the company, and through the court he acts as the company to the same extent *pro hac vice* as if the board of directors were operating the railroad.  It is the franchise which is being used in both cases, only in one case it is used for the company, and substantially by it, by means of its board of directors, while in the other case the same franchise is being used and the road is operated under it by an officer of the court until, by virtue of the legal proceedings connected with the receivership, the receiver is discharged and the road returned to its former possessors, or other proceedings taken under a reorganization, as provided by law.

The learned counsel for the receiver has cited the case of *Commonwealth* v. *Lancaster Savings Bank* (123 Mass. 493)

as authority for the proposition that after a corporation is placed in the hands of a receiver no tax of this nature can be levied upon or collected from it  But the case is not in the least analogous to the one under discussion.   In the case in Massachusetts  the tax was laid upon the amount of the average of deposits in the bank for the preceding six months, which was held to be a tax on the value of the franchise thus ascertained ; and it was further held that if, on the day when the tax was to be laid, the bank was in the hands of a receiver, it was not liable to pay any part of the tax although it transacted business during a part of the preceding six months.   It will be seen, however, that the receiver was appointed under a decree of the court perpetually enjoining the bank from doing any further business, and the receiver was appointed to wind up its affairs, and the bank was at once and forever deprived of the exercise or use of its franchise.   The court held that as the tax was upon the franchise, the value of which was to be ascertained on the day the tax was imposed, by reference to the amount of the average of deposits for the past six months, if on that day the franchise had ceased to exist, no tax could for that reason be imposed ; and it was wholly immaterial that for a portion of the preceding six months the franchise had been in existence and was actually used.   It thus appears that the appointment of the receiver was one of the steps to wind up a corporation which was on the day set for the imposition of the tax to all intents and purposes dissolved and was no longer in existence, and hence the decision of the court was entirely unassailable.

No such fact exists in the case before us.   The corporation was not dissolved in form nor in substance so far as this question is concerned.   The franchise was in existence and was actually used, and no decree of dissolution had ever been pronounced.   The agent who used the franchise was an officer of the court, acting under its authority, instead of the board of directors; but it was the franchise of the company which was in use at all times.   In *Union Trust Company* v. *I. M. R. R. Co.* (117 U. S. 434) the Supreme Court of the United

States, while declining to give preference to receiver's certificates over mortgage bondholders under the facts in that case, did grant preference to the claims of the state for taxes. The taxes were, it is true, upon property; but the case is not authority for the proposition that if the tax is not a technical lien on specific property when imposed, then no preference can be granted in a case like this. We reiterate the statement of PORTER, J., in *In re Receivership of Columbian Insurance Company* (3 Abb. Ct. of App. Dec. 239), that there is great force in the claim that " the state has succeeded to all the prerogatives of the British crown so far as they are essential to the efficient exercise of powers inherent in the nature of civil government, and that there is the same priority of right here, in respect to the payment of taxes, which existed at common law in favor of the public treasury."

We certainly have no doubt that in a case like this the court can make the order (slightly modified as mentioned below), which was made herein at Special Term, and that the statutory remedies for the collection of taxes of the nature herein specified are not controlling in the case of an insolvent corporation and upon such facts as are herein proved.

The parties hereto both agree that, as there is a fund applicable to the payment of these taxes, there is no necessity for the insertion in the Special Term order of the provision for issuing certificates by the receiver to raise money to pay the taxes. Without discussing or deciding the question, therefore, whether, in case the receiver had not the money on hand with which to pay these taxes, the court would order him to issue and sell receiver's certificates and with the proceeds pay them, we shall modify the Special Term order by striking out such provision. As thus modified we think that order was correct.

For these reasons the order of the General Term of the Supreme Court should be reversed, and that of the Special Term modified as already stated, and as modified affirmed, without costs.

All concur.

Ordered accordingly.