Nos. 19,676, 19,677, 19,678, 19,679.

THE STATE OF KANSAS, ex rel. JOHN S. DAWSON, as Attorney-general, etc., *Plaintiff*, v. CHARLES H. SESSIONS, as Secretary of State, etc., et al., *Defendant.*

SYLLABUS BY THE COURT.

1. CORPORATIONS—*Filing Annual Statements—Paying Annual Dues—Statute Applies Only to Corporations Doing Intrastate Business.* The provisions of the corporation act of 1913 requiring a foreign corporation to file annual statements and to pay an annual fee, as a condition to doing business in this state, do not apply to corporations engaged solely in interstate commerce, and as to corporations engaged in both local and interstate business they relate only to the conditions upon which intrastate business may be done.

2. SAME. The tax required by that act to be paid by a foreign corporation for the privilege of doing an intrastate business is a percentage of the proportion of its capital stock devoted to that part of its business.

3. FOREIGN RAILWAY CORPORATION ENGAGED IN BOTH LOCAL AND INTERSTATE COMMERCE—*How Taxable.* A foreign railway corporation engaged in both local and interstate commerce may be required to pay a state tax upon the privilege of doing an intrastate business, based upon the proportion of its total capital stock which is devoted to that purpose.

4. SAME—*When Fee Charged by Secretary of State is Final.* The amount of the fee charged by the secretary of state against a corporation under such act is final unless an appeal is taken from his determination to the tribunal therein provided.

The State, *ex rel.*, v. Sessions.

5. SAME—*Tax Required to be Paid for 1913.* Although such act was not published until April 13, 1913, it requires a payment of a tax for that year, and as so construed is valid.

6. SAME—*Corporation Operated by Receiver—Receiver Must Pay the Tax.* Where a receiver is carrying on the business of a corporation as a going concern he is in effect exercising its corporate franchise, and is liable for the payment of the tax imposed upon it.

7. SAME — *Incorporated    Coöperative    Society — Within    the Provisions of the Act.* An incorporated coöperative society organized for the purpose of providing wires for connection with a telephone exchange, or of maintaining a system of irrigation, for the benefit of its members, is a corporation "operated for pecuniary profit," "doing business for pay," within the meaning of those phrases as used in the act referred to.

Original proceedings in mandamus.    Opinion filed April 10, 1915.    Writ allowed.

*S. M. Brewster,* attorney-general, and *John L. Hunt,* assistant attorney-general, for the plaintiff; *W. P. Montgomery,* and *F. P. Lindsay,* both of Topeka, of counsel.

*Paul E. Walker, Luther Burns,* both of Topeka, and *Byron Clark,* of Omaha, Neb., for defendant The Chicago, Rock Island & Pacific Railway Company.

*William R. Smith, Owen J. Wood, Alfred. A. Scott,* all of Topeka, and *William Osmond,* of Great Bend, for defendant The Atchison, Topeka & Santa Fe Railway Company.

*W. W. Brown, James W. Reid,* both of Parsons, and *J. G. Slonecker,* of Topeka, for defendant The Missouri, Kansas & Texas Railway Company.

*E. R. Thorpe,* of Lakin, *William Easton Hutchison,* and *C. E. Vance,* both of Garden City, for defendant The Kearny County Farmers' Irrigation Association.

*George W. Allison,* of McPherson, for defendant The McPherson Rural Telephone Company.

18—95 KAN.

*S. C. Scott,* of Olathe, *T. F. Railsback,* and *E. C. Little,* both of Kansas City, for defendant The Mid-Continent Development Company.

*Ossian Cameron,* of Chicago, Ill., for defendant The Great Western Refining Company.

*Beardsley, Schaick & Beardsley,* of Kansas City, Mo., for defendant The Altoona Portland Cement Company.

The opinion of the court was delivered by

MASON, J.: Various companies which have paid under protest the annual fees provided by the corporation act of 1913 (Laws 1913, ch. 135, the material portions of which are set out *ante*, p. 261) have been made parties to some one of several actions brought in this court by the attorney-general, asking that whatever claims they may have to the sums collected be barred, and that the money be paid into the general revenue fund of the state treasurer. A number of the defendants have filed answers attacking the validity of the statute and of the fees, upon various grounds, and the cause is submitted on a motion for a judgment in favor of the plaintiff on the pleadings.

The Chicago, Rock Island & Pacific Railway Company contends that as to it and other foreign corporations doing both a local and an interstate business, the act is void because it undertakes to regulate interstate commerce. If it were given a strictly literal construction it might be open to that objection. It requires the payment of a fee which manifestly is intended as a tax upon the right of foreign corporations to do business in this state. It does not in so many words make any distinction between those which are and those which are not engaged in interstate commerce. But it was adopted after the cases of *Buck Stove Co. v. Vickers,* 226 U. S. 205, and *Western Union Tel. Co. v. Kansas,* 216 U. S. 1, had been decided. It was drawn and passed with full understanding that the state can not impose any restraint whatever on the right of a carrier

incorporated elsewhere to do an interstate business here, and can not require of it, as a condition to doing a purely local business, the payment of a percentage of its capital invested in business elsewhere or in interstate commerce. The legislature in this new enactment obviously undertook to tax the right of a foreign corporation to do intrastate business, and to fix the amount according to the capital invested in that business, not .as denoting the value of the right conferred by the state in this regard, but as bearing the same relation thereto that the total capital of a domestic company does to the value of its corporate franchise, and as indicating the relative value of the privilege enjoyed by the different concerns in this regard. The requirements of the statute are imposed on such foreign corporations doing business in this state as are "subject to compliance with the laws relating to the admission of foreign corporations to do business in Kansas." (§ 2.) Corporations which are engaged solely in interstate commerce are therefore wholly exempt from all its provisions, and those which do both an interstate and an intrastate business are exempt so far as concerns the former. The phrases "that proportion of such foreign corporation's issued capital stock as is devoted to its Kansas business" (§ 2), and "the issued capital stock used in Kansas," refer to the amount of capital invested in doing a purely local business. The total capital of the company is involved only as a basis for arriving at a reasonable estimate of the capital devoted to transportation originating and ending in Kansas.

It is not regarded as necessary or desirable to review at length the decisions of the United States supreme court bearing upon the general question, a phase of which is here presented. We regard the present case as falling well within the rule thus indicated:

"When the sovereign authority has exercised the right to tax a legitimate subject of taxation as an exercise of a franchise or privilege, it is no objection

that the measure of taxation is found in the income produced in part from property which of itself considered is non-taxable." (*Flint v. Stone Tracy Co.,* 220 U. S. 108, 165.)

"This court has had also to consider and determine the effect of statutes which undertake to measure a tax within the legitimate power of the State by receipts which came in part from business of an interstate character. In that class of cases a distinction was drawn between laws burdening interstate commerce, and laws where the measure of a legitimate tax consists in part of the avails or income from the conduct of such commerce." (*U. S. Express Co. v. Minnesota,* 223 U. S. 335, 343.)

The privilege of a foreign corporation to engage here in business, other than interstate commerce, being one which the state may grant or withhold, is a legitimate subject of taxation. That privilege is protected by state laws, in common with other interests, and the giving of such protection adds something to the cost of local government. They who exercise the privilege ought, in fairness, by reason of it to bear a small additional share of the common burden of taxation. The amount of contribution asked is arrived at in what seems to be the most reasonable way. The effort to reach a just result without interfering with the operations of interstate commerce has obviously been made in good faith, and we think with entire success.

In *Baltic Mining Co. v. Massachusetts,* 231 U. S. 68, and the case reported with it, a tax laid by a state upon the right of a foreign corporation to do business therein amounting to a percentage of its capital stock (which was less than the actual investment) was upheld, although a considerable part of its business consisted of making sales and shipments which constituted interstate commerce. The circumstance that the corporation was not a carrier—that the business for which it was chartered was not of itself commerce—was mentioned as bearing upon the question whether interstate

commerce was burdened, but the case was decided on the rule already announced, the court saying:

"The conclusion, therefore, that the authorized capital is only used as the measure of a tax, in itself lawful, without the necessary effect of burdening interstate commerce, brings the legislation within the authority of the State."  (p. 87.)

The supreme court of the United States has upheld a statute substantially like that in question, against the same objection now urged, in these words:

"We have no difficulty in sustaining the tax in question as a legitimate imposition upon a foreign corporation with respect to its exercise of the privilege of transacting intrastate business in corporate form, the tax being based upon the amount and value of its property within the State.   It is fixed at a definite percentage ($\frac{1}{20}$ of one per cent) of 'the proportion of the outstanding capital stock of the corporation represented by property owned and used in business transacted in this State,' and the Act provides machinery for ascertaining the market value of the entire capital stock and striking a proportion between the value of the property owned and used by the corporation in the State and that owned and used by it outside of the State." (*St. Louis S. W. Ry. v. Arkansas,* 235 U. S. 350, 365.)

The Rock Island company insists that notwithstanding the construction adopted, the taxing officers may, so far as the pleadings show, have proceeded on the theory that by "business in Kansas" was meant all business transacted here, interstate as well as local. The presumption, however, is that the officers acted lawfully.   Moreover, an appeal is provided from the determination of the secretary of state fixing the fee (Laws 1913, ch. 135, § 8), and unless this statutory remedy is pursued (and the pleadings show inferentially at least that it has not been) the amount can not be questioned (37 Cyc. 1079).

A further contention is that the statute makes an unwarrantable discrimination between domestic and foreign corporations, basing the fee of the former upon the "paid-up" capital stock and that of the latter

on the "issued" capital stock. The phrase "issued capital stock" is used in distinction from authorized capital stock, and manifestly can refer only to the actual investment, because the fee is regulated by the proportion of the issued stock that is "devoted to its Kansas business"—"used in Kansas."

No question of noncompliance with the provisions of the statute regarding the filing of statements is here involved, but a suggestion is made that to require an interstate carrier to furnish some of the items of information mentioned would be to impose a burden on interstate commerce. No specific item is pointed out as being of that character. If any such exists, the interpretation already indicated makes it inoperative with respect to such a corporation.

The statute was approved February 24, 1913, and took effect upon its publication in the statute book, April 30, 1913. The contention is made that it therefore authorized no tax for the year 1913, and that if construed to have that effect, it deprived the corporation of a vested right to exercise its franchise in Kansas for at least a part of the period for which the tax is assessed. We think the legislature did not intend an exemption for the year 1913, and had authority to impose the tax for that year, notwithstanding the date of publication.

In behalf of the Missouri, Kansas & Texas Railway Company the point is made that the statute discriminates against domestic corporations, in that the fee required of them is based upon their whole capital stock, while in the case of foreign corporations it is measured by the amount invested in Kansas business. The distinction is justified by the difference in the character of the privilege taxed, being in the one case the right to be a corporation, and in the other the right to do business in Kansas.

The receiver of the Mid-Continent Development Company has paid the fee charged against that corpo-

ration, and raises the question of his liability in that connection. Where a receiver is carrying on the business of a corporation as a going concern he is in effect exercising its corporate franchise, and the state properly looks to him to pay the tax imposed upon it. (*Central Trust Co. v. N. Y. C. & N. R. R. Co.*, 110 N. Y. 250, 18 N. E. 92; *N. Y. Terminal Co. v. Gaus*, 204 N. Y. 512, 98 N. E. 11.)

The McPherson Rural Telephone Company and the Kearny County Farmers' Irrigation Association ask the return of the fees respectively paid by them, on the ground that they are within the exemption extended to "corporations which are not organized or operated for pecuniary profit which are not doing business for pay." (Laws 113, ch. 136, § 1.) They exist under the statute providing "That twenty or more persons in this state may organize and incorporate a co-operative society or company in the manner and form provided by law in other cases, for the purpose and to the end of more successfully promoting and conducting any industrial pursuit." (Gen. Stat. 1909, § 1904.) They have no capital stock, receive no pay, declare no dividends. The one maintains a line of wires connecting with a telephone exchange, the other a system of irrigation. Each is designed for the material advantage of its members, who have chosen to adopt this particular form of incorporation as adapted to their needs. The essential purpose and the ultimate effect are the same as though the corporation required the members to pay for the use of the wire or the water, making the charge just enough to meet the expenses of maintenance. The organizations are in a sense operated for pecuniary profit, as distinguished, for instance, from moral profit. They in a sense do business for pay, as distinguished from doing it from benevolence. We think, in the absence of a more explicit exemption, they should be re-

quired to make payment for the privilege of corporate existence.

Judgment is rendered for the plaintiff on the pleadings, directing the money in the hands of the secretary of state to be paid into the state treasury.

DAWSON, J., not sitting.