No. 20,291.

THE STATE OF KANSAS, *Appellant,* v. THE INDEPENDENCE GAS COMPANY et al. (JOHN M. LANDON et al., as Receivers, etc., et al., *Appellees*).

SYLLABUS BY THE COURT.

1. FOREIGN CORPORATION—*Independence Gas Company—Liable for Corporation Tax.* Although a corporation may lease most of its property to another company it will still be liable for the tax imposed on it for the privilege of exercising its franchise in the state, where it retains its corporate franchise, seal, books, papers, documents and some of its property and agrees to maintain its organization and to perform a number of corporate acts in carrying out the conditions of the lease, and where it is stipulated that it is to take possession of the leased property when the lease is terminated, or at any earlier time that the lessee shall make default in performing the conditions and covenants of the lease.

2. SAME—*Former Court Proceedings Did Not Exempt Company From Payment of Corporation Tax.* The fact that an action was brought by the state charging that the corporation had violated the trust laws, in which a receiver was appointed to conduct the business of the corporation until certain perversions and corporate abuses were corrected, did not operate to exempt the company from the payment of the corporation tax.

3. SAME—*Certain Agreements Did Not Relieve Company From Corporation Tax.* Nor will an agreement made at the end of the taxing period between the corporation and other companies with their creditors, in which the plaintiff joined, and wherein it was stipulated that upon the making of certain payments, the execution of certain assignments and the performance of other conditions, the property of the corporation taxed should merge in and become a part of the property of

another company, relieve it from the payment of the tax for the preceding year.

Appeal from Montgomery district court; THOMAS J. FLAN-
NELLY, judge. Opinion filed February 10, 1917. Reversed.

*S. M. Brewster*, attorney-general, and *W. P. Montgomery*,
special assistant attorney-general, for the appellant.

*O. P. Ergenbright*, and *T. S. Salathiel*, both of Independence,
for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This proceeding involves an application
by the state for an order requiring the Kansas City Pipe Line
Company, a New Jersey corporation licensed to do business in
Kansas, to pay its corporation fees imposed by the state for
the years 1913 and 1914, in amount $2000 for each year. The
trial court gave judgment in favor of the state for the 1913
fee but held that the corporation was not liable for that of
1914. The state appeals.

The tax is imposed under chapter 135 of the Laws of 1913
(Gen. Stat. 1915, §§ 2167-2180). According to section 2 of
the act it is laid on foreign corporations "for the privilege of
exercising its franchise in Kansas." (*The State, ex rel., v.
Sessions*, 95 Kan. 272, 147 Pac. 789.) To determine whether
or not the pipe line company was exercising its corporate
privileges during the year 1914 so as to make it liable for the
corporation tax the leading facts in its history must be con-
sidered. The pipe line company is the owner of pipe lines,
pumping stations and other appurtenances and facilities for
the production, sale and distribution of natural gas in Kan-
sas. In February, 1906, it executed a lease of all its property
to the Kaw Gas Company, a subsidiary company of the Kan-
sas Natural Gas Company, excepting only its corporate
franchise, its office fixtures, its corporate seal, its minute,
transfer and stock books, its dividend books and its deeds and
documents showing its right and title to the leased property;
and since that time the Kansas Natural Gas Company has had
charge of the leased property. According to the report filed
in the secretary of state's office for the year 1914 the pipe line
company had a paid-up capital of four and a half millions and

the value of its property as fixed by the tax commission was $3,094,243. The ruling herein was made in a suit brought by the state against the Independence Gas Company and others for certain violations of the anti-trust laws. The pipe line company and others were afterwards made parties defendant upon the order of the court. On February 15, 1913, an injunction was issued against the last named defendants enjoining them from appearing in any other court in connection with the matters involved in that proceeding. On June 21, 1913, plaintiff filed a supplemental petition asking for the appointment of a receiver for the pipe line company until certain perversions and abuses by the corporation were corrected, and charging also that the corporation had violated the injunction of February 15, 1913. A receiver was appointed upon the application of the plaintiff and in its order the court recited that the pipe line company had taken action in the federal court which was in effect an attempt by the company to interfere with the jurisdiction of the state court and a violation of the injunction previously issued. Afterwards the receiver reported that although he had made demand for the property of the pipe line company none of the property or assets in the hands of the lessee had been delivered to him. On December 17, 1914, the pipe line company, as well as the other defendants, entered into a stipulation with the creditors of the Kansas Natural Gas Company which, among other things, provided for paying certain indebtedness of the pipe line company and for the final merger of the pipe line company with the Kansas Natural Gas Company; and this agreement was incorporated into an order of the court made December 29, 1914.

It is contended that the pipe line company is not carrying on business in Kansas and is no more than an instrumentality of the Kansas Natural Gas Company, which owns one-half of its capital stock. While the company leased nearly all of its property to another company there was an explicit withholding of certain property and of its franchise and privileges. The lease contemplates the continued existence of the pipe line company and the exercise of its franchise, in several particulars. Aside from excepting its franchise to be a corporation, from the lease, it reserves the corporate seal, books and furniture; and there is a stipulation that during the continuance

43—99 KAN.

of the lease the lessor will maintain its corporate organization, elect officers, hold meetings, make all necessary records and returns and, at the request of the lessee, do any necessary corporate acts for the furtherance of the business, and that if the lessor fails to do so the lessee may use the name of the lessor in the exercise of the corporate powers and privileges, and also in prosecuting or defending actions to protect its interests. There is a stipulation that if the lessee desires to resist a tax or assessment on the ground of illegality, the lessor shall not pay the tax or assessment until thirty days after final adjudication of the question. It is further provided that the lessee will pay taxes, assessments, licenses or charges imposed upon the lessor with reference to its capital stock, franchise, privileges or property. The lessee agrees to pay mortgage bonds of the lessor as they fall due; also a sum sufficient to enable the lessor to pay six per cent dividends on its capital stock and the actual expense of maintaining its corporate existence, not exceeding $500 per year. Another stipulation is that the lessee will operate the plant and property in such a manner as will meet the demands of the public service and promote the interests and preserve the franchise vested in the lessor. It contains a provision as to making extensions and betterments of the plant and that if made from the proceeds of the bonds of the lessor the extensions and betterments so made and all rights or privileges obtained in connection with the premises shall become the property of the lessor. The lessee was required to insure the leased premises against damage by fire in good companies in a particular way, but it is stipulated that the lessee may adopt another plan of protection provided it is approved by the directors of the lessor. There is the further stipulation that upon the expiration or earlier termination of the lease the property including all the additions and improvements and all the accompanying rights, privileges and franchises shall be returned and surrendered to the lessor, and that if at any time the lessee defaults or fails to perform the covenants and conditions of the lease and if the default continues for thirty days after notice and demand by the lessor that the lessee pay or perform, the lessor may terminate the lease and reënter upon the premises, taking possession of all the property as well as the rights, privileges and franchises which had been acquired by the lessee

in connection with the property. To protect its rights the lessor is authorized at all reasonable times to enter upon and inspect the property so as to ascertain whether the conditions of the lease are being faithfully carried out.

It is manifest that the parties intended and provided that the pipe line company should continue its corporate existence, elect officers and maintain its corporate organization and should exercise corporate privileges within the state during the continuance of the lease. It is equally clear that it contemplated that corporate business of an important character should be done by the pipe line company. While it turned over the principal part of its property to the lessee, it retained a part, as we have seen, and according to the lease it was provided that upon certain contingencies the leased property should be returned to it as well as the additions and betterments made while the plant was in the possession of the lessee. While the business done was small compared with what would have been done had the lease not been effected, the company was still doing corporate business in the state and business which, under the terms of the lease, was essential to the operation of the plant and the carrying out of the agreement between the lessor and lessee. The fact that the state in the action brought had charged the pipe line company with violations of the law and abuses of corporate privileges did not exempt the company from liability for the corporation tax. Perversions may be enjoined and abuses corrected without dissolving the corporation or ousting it from the state. Neither did the fact that a receiver was appointed relieve the company from the payment of the tax. While the receiver is an officer of the court he is also acting as and for the company. The franchise is exercised and the business conducted just as the board of directors or other managers would have done if no receiver had been appointed. It has already been held that when a receiver is carrying on the business of a corporation as a going concern he is in effect exercising the corporate franchise and is subject to the payment of the corporation tax. (*The State, ex rel., v. Sessions,* 95 Kan. 272, 147 Pac. 789; see, also, *Central Trust Co. v. N. Y. C. & N. R. R. Co.,* 110 N. Y. 250; *N. Y. Terminal Co. v. Gaus,* 204 N. Y. 512.) The company as a going concern exercised the same corporate

privileges as it had exercised during the year 1913, and for the tax of that year the trial court held it to be liable. It appears that the receiver is still exercising the functions of his office and doing the business which the company had been doing prior to his appointment. There has been no ouster by the state and the pleadings filed by it did not ask for a dissolution of the corporation. It is contended that the creditors' agreement signed by the parties, including the plaintiff, should be treated as a consent by the state to a dissolution of the corporation. That agreement among many other things provided that upon the making of certain payments and assignments and the performance of other conditions the property of the pipe line company should be merged in and become a part of the properties of the Kansas Natural Gas Company. Even if the agreement were given the interpretation claimed for it by the defendant it would not relieve the company from the payment of the tax. The agreement was not made until after the liability for the tax of 1914 had attached. It appears to have been executed on December 17, 1914, and was approved by the court on December 29, 1914. At that time the court expressly ordered that the receivership of the pipe line company should be continued after January 1, 1915, and until such future time as to the court should appear to be advisable, and also that the property and business of the pipe line company should remain in the control of the receiver. The order contemplated that corporate privileges were to be exercised and business was to be done by the receiver throughout and after the year 1914 and no reason is seen for excusing the company from the payment of the tax imposed for that year.

The judgment is reversed with directions to enter judgment in favor of the plaintiff for $2000.

DAWSON, J., not sitting.