THE PEOPLE OF THE STATE OF NEW YORK ex rel. ANDREW E. KALBACH, as Receiver of the Property of the SECOND AVENUE RAILROAD COMPANY in the City of New York, Relator, *v.* THE STATE TAX COMMISSION OF THE STATE OF NEW YORK, Respondent.

Third Department, November 12, 1919.

Tax — street railroads — franchise tax upon leased railroad not operated by lessee — operation of railroad by receiver appointed on foreclosure — Tax Law, section 185, construed.

Section 185 of the Tax Law, imposing a franchise tax of one per cent upon the gross earnings of elevated or surface railroads not operated by steam, and three per cent upon dividends declared in excess of four per cent, and further providing that such railroad corporations as were leased to other railroad corporations shall only be required to pay a tax of three per cent upon dividends in excess of four per cent, intended to divide such railroads into two classes, *first*, those engaged in the actual operation of such railroads, and *second*, those not engaged in the actual operation but whose property is operated by another railroad corporation under a lease.

348 People ex rel. Kalbach *v.* State Tax Commission.

Third Department, November, 1919.    [Vol. 189.

Thus, although the property of a street railroad company in the city of New York was leased to another railroad company and both companies were insolvent and in the hands of receivers, the leased company will be required to pay the franchise tax of one per cent on the gross earnings received by the receiver where its properties were not in fact operated by the receiver of the lessee but by the receiver of the lessor appointed on a mortgage foreclosure and who received the earnings.

The amendment to section 185 of the Tax Law made by chapter 710 of the Laws of 1917 in effect made clear the intent of the Legislature that the tax upon the gross earnings was to be paid by the corporation or its representative engaged in the actual operation of the railroad.

Under the circumstances aforesaid the lease of the railroad to another company was ineffectual to relieve the lessor from the payment of the tax during such period as the lessee did not exercise the corporate franchise or operate the leased railroad.

Certiorari issued out of the Supreme Court and attested on the 27th day of October, 1917, directed to the State Tax Commission of the State of New York, commanding the said Commission to certify and return to the office of the clerk of the county of Albany all and singular the evidence before said Commission on the hearing of an application of the relator for revision and readjustment of the tax assessed under section 185, subdivision 1, of the Tax Law, and all proceedings thereon and all its decisions and actions in the premises.

*Davies, Auerbach & Cornell* [*Brainard Tolles* of counsel], for the relator.

*Charles D. Newton, Attorney-General* [*C. T. Dawes, Deputy Attorney-General,* of counsel], for the respondent.

Lyon, J.:

The question presented by this appeal is whether the franchise assessment of the Second Avenue Railroad Company was properly made under the first sentence of section 185 of the Tax Law, or whether the same should have been made under the second sentence of that section. The Second Avenue Railroad Company is the owner of certain street railroads and of certain franchises for the operation thereof. On the 28th day of January, 1898, a lease of said railroads, excepting its franchise as a corporation, its shares of capital stock, and its rights reserved under that agreement, was

made to the Metropolitan Street Railway Company, which took possession of and operated the same until there was transferred to the Interurban Street Railway Company, afterwards known as the New York City Railways Company, all the street railroads in New York city, including its leasehold interest in the railroad of the Second Avenue Railroad Company. In September, 1907, the New York City Railways Company being insolvent, receivers of its property were appointed by the Circuit Court of the United States. The Metropolitan Street Railway Company finding its affairs closely involved with those of the New York City Railways Company, obtained an order extending the receivership to cover its property. Both corporations were afterwards adjudged to be insolvent and their receiverships were made permanent. The receivers so appointed took possession of the railroads of the Second Avenue Railroad Company and expended large sums in the improvement of the property. The receivers after negotiating with the Second Avenue Railroad Company and being unable to agree upon a modified compensation, with the approval of the court decided not to adopt the lease. The property of the Second Avenue Railroad Company when leased was subject to a mortgage to the Guaranty Trust Company given to secure the payment of bonds. In an action for the foreclosure of the mortgage, an order was obtained from the New York Supreme Court appointing a receiver *pendente lite,* who was authorized to operate the railroads. In September, 1908, this receiver applied to the Circuit Court of the United States for possession of the leased railroads " without impairment of any right of action of the Second Avenue [Railroad] Company or of your petitioner against the Metropolitan Company on account of its obligations accrued or to accrue under the covenants of said lease." The petition was granted and the court directed the receivers of the Metropolitan Railway Company to cease operating the railroad lines, and to give possession, except of certain ducts, and on November 13, 1908, the possession of said railroads and properties of the Second Avenue Railroad Company passed to the receiver appointed by the Supreme Court of New York. Linch, the first appointed receiver, having died, one Beaver was appointed receiver. He filed reports covering the period from November 13, 1908,

350  People ex rel. Kalbach *v.* State Tax Commission.

Third Department, November, 1919.        [Vol. 189.

to June 30, 1916, in accordance with section 192 of the Tax Law (as amd. by Laws of 1915, chap. 317), showing the gross earnings derived from all sources received by the receivers, and stating his belief that under section 185 of the Tax Law, he was not liable to pay any tax upon gross earnings, and desired to relieve himself from any personal liability. Beaver having died, the present receiver was duly appointed. The State Tax Department having assessed a tax against the receiver of $70,044.53, being one per centum of the gross earnings of said receiver from all sources from November 13, 1908, to June 30, 1916, and having granted a rehearing and affirmed the determination, the receiver has brought this proceeding for the purpose of reviewing such final determination.

Section 185 of the Tax Law as it existed prior to June 1, 1917, was as follows: " Every corporation, joint-stock company or association owning or operating any elevated railroad or surface railroad not operated by steam shall pay to the State for the privilege of exercising its corporate franchise or carrying on its business in such corporate or organized capacity within this State, an annual tax which shall be one per centum upon its gross earnings from all sources within this State, and three per centum upon the amount of dividends declared or paid in excess of four per centum upon the actual amount of paid-up capital employed by such corporation, joint-stock company or association. Any such railroad corporation whose property is leased to another railroad corporation shall only be required under this section to pay a tax of three per centum upon the dividends declared and paid in excess of four per centum upon the amount of its capital stock." It seems to have been the legislative intent for the purpose of imposing a franchise tax upon such corporations to divide them into two classes: *First*, those engaged in the actual operation of such railroads, and *second*, those not engaged in the actual operation, but whose property is operated by another railroad corporation under a lease.

It is true the property of the Second Avenue Railroad Company was leased to the Metropolitan Street Railway Company, but the property was not operated by the receiver of the lessee but by the receiver of the lessor who received the gross earnings.

By chapter 710 of the Laws of 1917, which became a law June first of that year, there was added to the end of section 185 the following words: "Except that where the property leased is operated by a receiver and the gross earnings are not included with the gross earnings of the lessee for the purposes of taxation under this section, then such receiver shall be required to pay the tax upon gross earnings as hereinbefore provided." I think the purpose of this amendment was to make clear the intent of the act, which was that the tax upon gross earnings was to be paid to the State by the corporation or its representative engaged in the actual operation of the railroad. The controlling fact is that under the order of the court the receiver of the Second Avenue Railroad Company took possession of the property of the corporation and operated the railroad and received the earnings thereof. "But we are of the opinion that the railroad when in the receiver's hands and operated by him, is operated under and by virtue of the franchise which has been conferred upon the corporation by the State, and that when he receives the gross earnings arising from its operation and has in his hands money enough to pay these taxes, the State has a paramount right to collect them before the moneys applicable to such payment shall be paid away by the receiver." (*Central Trust Co.* v. *New York City & Northern R. R. Co.*, 110 N. Y. 250, 257; *People ex rel. Joline* v. *Williams*, 200 id. 528.)

As between the State and the relator the lease by the Second Avenue Railroad Company to the Metropolitan Street Railway Company is ineffectual to relieve the relator from the payment of the tax. During the period in question the Metropolitan Railway Company did not exercise the corporate franchise or operate the Second Avenue Railroad Company, but the relator's predecessors did, and it was their duty to pay the tax imposed for that privilege.

The determination should be confirmed, with fifty dollars costs and disbursements.

Determination unanimously confirmed, with fifty dollars costs and disbursements.