Margarita Bertrán de Picardo y su esposo Benito Picardo, demandantes y apelantes, *v.* Manuel V. Domenech, Tesorero de Puerto Rico, demandado y apelado.

No. 6611.—*Sometido:* Mayo 8, 1935. *Resuelto:* Junio 28, 1935.

*González Fagundo & González, Jr.,* abogados de los apelantes; *Hon. Procurador General, Benjamin J. Horton* y *R. Cordovés Arana, Subprocurador,* abogados del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Versa este pleito sobre devolución de contribuciones pagadas bajo protesta. Se inició por demanda radicada en la Corte de Distrito de Humacao el 11 de noviembre de 1931. Presentáronse por el demandado mociones eliminatorias, quedando archivada una segunda demanda enmendada en marzo 11, 1932.

En ella se alega substancialmente que dueño Diego Zalduondo de varias fincas rústicas las hipotecó a favor de la demandante para garantizar un crédito de veinte mil dólares por escritura de marzo 5, 1927, que se presentó en el Registro de la Propiedad de Humacao en marzo 9, 1927, y se inscribió en abril 6, 1927; que vencido el crédito, no fué satisfecho, iniciando la demandante para su cobro en febrero 21, 1931, un procedimiento sumario, en el que se ordenó finalmente la venta en pública subasta de las fincas hipotecadas que se llevó a efecto en julio 5, 1931, mediante adjudicación de las mismas a la demandante en pago parcial de su crédito; que en marzo 5, 1927, las fincas hipotecadas no se encontraban afectas en el registro a carga alguna a favor del Pueblo de Puerto Rico y que al adquirirlas la demandante en julio 5, 1931, las encontró embargadas por el Pueblo para responder de $1,767.57 de contribuciones adeudadas impuestas sobre ellas y, además, de $1,744.30 de los cuales $530.45 correspondían a contribución sobre ingreso del año 1925, y el resto a contribuciones por las primas de seguro obrero, años 1926–27 a 1929–30; que para evitar el procedimiento de apremio y la venta de las fincas que había adquirido pagó la contribución territorial sin protesta y bajo protesta las otras; que cuando dichas otras contribuciones se impusieron a Zalduondo éste tenía bienes muebles sufi-

cientes para satisfacerlas y el Departamento de Hacienda no hizo gestión alguna para cobrarlas embargando dichos bienes; que cuando la hipoteca constituída a favor de la demandante por Zalduondo se inscribió, no aparecía en el registro anotación alguna de embargo a favor del Pueblo; que el embargo se trabó en octubre 1, 1930, teniendo Zalduondo otros bienes, a fin de obligar a la demandante a pagarlo cuando adquiriera las fincas para librarlas; que desde antes de 1926 no trabajaban obreros asegurados en las fincas en cuestión, y que éstas sólo respondían al Pueblo de los tres últimos años de contribución territorial.

Excepcionó y contestó la demanda el demandado. Sostuvo, en resumen, que el Pueblo tenía derecho al cobro total de las contribuciones de que se trata.

Fué el pleito a juicio. Ambas partes presentaron prueba y la corte en abril 29, 1933, dictó sentencia declarando la demanda sin lugar, sin especial condenación de costas.

Apeló la demandante, radicando la transcripción en febrero 8, 1934 y su alegato en junio 1º. siguiente, señalándose la vista del recurso para mayo 8, 1935, en que en efecto tuvo lugar quedando definitivamente sometido el caso a nuestra consideración y resolución.

Tres errores señala la apelante en su alegato cometidos a su juicio por la corte sentenciadora al resolver que la evidencia de la demandante no fué suficiente para destruir la presunción de que el demandado cumplió con la ley buscando primero bienes muebles de Zalduondo para el cobro de la contribución; al decidir que la contribución sobre ingresos constituía un gravamen preferente al hipotecario de la demandante, y al decidir de igual modo que era preferente a la hipoteca la contribución sobre seguro obrero.

■ Examinemos el primer señalamiento de error. Se trata de una cuestión de hecho. Resolviéndola, la corte sentenciadora, en su relación del caso y opinión, se expresó así:

"La Corte oyó la evidencia presentada por la demandante con relación al dominio del contribuyente moroso sobre determinados

bienes muebles, libres de gravamen, con la venta de los cuales hubiera podido hacerse efectiva la contribución no territorial por el mismo adeudada, y, aquilatando previamente dicha evidencia, entiende que la misma no es suficiente para controvertir totalmente la presunción que existe de que el señor Tesorero de Puerto Rico, por conducto de sus agentes, cumplió con sus obligaciones de ley y buscó para la ejecución los correspondientes bienes de don Diego Zalduondo, sin encontrarlos por no poseerlos éste en concepto alguno, no siendo suficiente la evidencia presentada al efecto por la demandante para convencer a la Corte efectivamente de que dichos bienes existían en las condiciones en que se ha alegado por la demandante.''

Hemos leído la declaración de Diego Zalduondo, única prueba aportada por la demandante sobre el particular. Dice ciertamente que tenía bueyes, caballos, carros y otros bienes a la fecha en que debía las contribuciones de que se trata que, dado el valor que les atribuye, hubieran sido sucientes para hacer con ellos efectiva su deuda sin necesidad de recurrir al embargo de sus bienes inmuebles, pero parece que no mereció entero crédito al juez sentenciador.

La evidencia documental presentada en oposición por el demandado y admitida sin objeción por la demandante demuestra que se ordenó el cobro de la contribución procediéndose al embargo y venta de propiedad mueble de Zalduondo y que éste fué requerido para que la mostrase y no habiéndolo hecho se procedió a su busca con resultado negativo, siendo entonces que se embargaron sus bienes inmuebles.

Preguntado Zalduondo por el demandado sobre el hecho del requerimiento contestó ''que no recuerda si fué requerido por algún agente de rentas internas para que dijera los bienes muebles que tenía,'' contestación que bajo las circunstancias concurrentes pudo considerarse como evasiva.

No creemos que, con lo que existe en los autos, pueda concluirse que la corte sentenciadora erró al considerar insuficiente la prueba de la demandante. A nuestro juicio no quedó demostrada de modo claro la existencia de bienes muebles del deudor propios y bastantes para hacer efectiva

la deuda. Tampoco que el embargo de los bienes inmuebles del deudor se practicase "con el fin de obligar a la ahora demandante, cuando adquiriera las fincas a pagar dichos embargos", como se alega en la demanda.

Se sostiene que la conclusión de la corte sentenciadora fué errónea porque partió de la base de una presunción que no existe. En efecto dicha corte expresó en lo que dejamos transcrito de su relación del caso y opinión, que la presunción de que el Tesorero había cumplido con su deber por conducto de sus agentes, no fué destruída. Pero antes había dicho que había "aquilatado previamente" la evidencia presentada por la demandante.

El artículo 102, párrafo 15, de la Ley de Evidencia, 464 del Código de Enjuiciamiento Civil, ed. 1933, establece como una presunción disputable que los deberes de un cargo han sido cumplidos con regularidad. Aquí se disputó la presunción mediante las alegaciones y la evidencia que conocemos y fué entonces que el funcionario demandado presentó su evidencia documental. El juicio final de la corte se formó tras una consideración de todos los elementos aportados por las partes. Si la declaración de Zalduondo le hubiera merecido entero crédito, pudo llegar a una conclusión distinta, pero aquilatada por él previamente dicha declaración, no la consideró con fuerza suficiente para destruir la presunción de que el Tesorero, por sus agentes, cumplió con su deber trabando el embargo sobre bienes inmuebles del deudor después de haber requerido a éste para que señalara bienes muebles y de no haberlos encontrado, presunción que no sólo surgía de la regla en sí, si que fué robustecida por las afirmaciones contenidas en la evidencia documental del demandado. Véase el caso de *United States v. Carr,* 132 U. S. 644, 653.

Desde luego que la presentación de documentos en los que conste por la propia certificación de los funcionarios públicos que éstos realizaron determinados actos, no es for-

taleza inexpugnable. Puede atacarse y destruirse. Y el Gobierno debe estar alerta e ir a juicio bien preparado para demostrar con otra prueba si fuere necesario que tales actos se realizaron en verdad. Lo que aquí sucede, repetimos, es que la evidencia aportada por la demandante no mereció entero crédito a la corte y es en realidad deficiente.

¿Se cometió el segundo? Veámoslo.

No impugna la apelante la legalidad de la contribución de ingresos. Sólo sostiene que habiéndose publicado el 29 de julio de 1930 en la Colecturía de Rentas Internas de Fajardo, o sea con pesterioridad no sólo a la constitución (marzo 5, 1927) si que al vencimiento (marzo 5, 1930) de la hipoteca, no puede cobrarse con pereferencia a ésta, de conformidad con la misma ley que invoca el demandado o sea la sección 83 de la Ley No. 74 de 1925 (pág. 401) que dice así:

"Sección 83.—Las contribuciones impuestas por esta Ley, y sus penalidades, recargos e intereses, constituirán en todos los casos un crédito preferente a favor de El Pueblo de Puerto Rico sobre la propiedad mueble e inmueble y derechos reales del contribuyente, desde y después de la fecha de la publicación de tal contribución en la oficina del Colector de Rentas Internas de la municipalidad, y dichas contribuciones serán cobradas por el Tesorero de Puerto Rico del mismo modo y mediante el mismo procedimiento de apremio establecido por la ley actual para el cobro de contribuciones sobre la propiedad."

No estamos conformes. En el texto inglés de la ley que debe prevalecer por ser ésta copia casi literal de la ley federal sobre la materia de 1924 (*Calaf* v. *Gallardo,* 36 D.P.R. 147, 150) en vez de "crédito preferente" se dice "*first lien*" que tiene un significado más amplio.

Cuando la hipoteca se ejecutó ya constaba debidamente publicado el "*first lien*" a favor del Pueblo y como lo era a virtud de una ley que regía desde antes de constituirse la hipoteca, no cabe sostener que interfiriera con las obligaciones que surgen de aquel contrato. De ahí que sea enteramente aplicable el caso de *Provident Institution* v. *Jersey*

*City,* 113 U. S. 506, 514, 515, en el cual la Corte Suprema de los Estados Unidos por medio de su Juez Bradley, se expresó así:

"Es innecesario determinar por ahora cuál puede ser el efecto de esos estatutos, a este respecto, sobre hipotecas que fueron constituídas con anterioridad al estatuto de 1852. Las hipotecas de la demandante no fueron constituídas antes de empezar a regir ese estatuto, sino mucho después. Cuando la demandante tomó sus hipotecas, conocía cuál era la ley; sabía que según la ley si las autoridades de la ciudad suministraban agua de Passaic a la finca hipotecada, el importe de dicha agua, tal cual establece su reglamento y exige la ciudad, constituiría un gravamen preferente sobre el solar. Optó por aceptar sus hipotecas sujetas a esta ley; y es inútil sostener que el resolver que su gravamen es secundario a los cánones adeudados por concepto de agua, ora estén vencidos o no, equivale a privarle de su propiedad sin el debido proceso de ley. Su propio acto volitivo, su propio consentimiento, es un elemento que forma parte de la transacción. Los casos a que hace referencia el letrado en el sentido de que resuelven lo contrario y que deciden que el consentimiento prestado en contra de las disposiciones de la Constitución es nulo, no tienen aplicación a los casos aquí envueltos."

██ Una cuestión nueva se suscita discutiendo el error. La apelante invoca en su favor de la Ley No. 14 de agosto 24 de 1933 ((2) pág. 77), cuyas secciones 1, 3 y 5, disponen:

"Sección 1.—Por la presente se declaran gravámenes preferentes a toda otra carga o gravamen por contribuciones o por cualquier otro concepto, los créditos hipotecarios y los créditos refaccionarios, con excepción de las contribuciones sobre la propiedad gravada por tres años y la anualidad corriente.

"Sección 3.—Se declara que esta Ley tendrá y tiene efecto retroactivo en cuanto a cargas y gravámenes por contribuciones adeudadas que no sean sobre la propiedad y a las cuales de acuerdo con las disposiciones de leyes anteriores a ésta se les hubiera dado el carácter de gravamen preferente.

"Sección 5.—Las contribuciones impuestas por la 'Ley de Contribuciones sobre Ingresos de 1924' y las cuotas de indemnizaciones a obreros, sus penalidades, recargos e intereses, serán cobrados por el Tesorero de Puerto Rico mediante el mismo procedimiento de apremio establecido por la ley para el cobro de contribuciones sobre la

propiedad, pero el embargo que se practique sobre bienes inmuebles y derechos reales solamente tendrá preferencia desde la fecha de su inscripción en el registro y únicamente sobre gravámenes y cargos posteriores a dicha fecha. El registrador de la propiedad al recibir la notificación del embargo tomará nota de la misma al margen o a continuación de las inscripciones de las fincas o derechos reales del contribuyente. El Tesorero de Puerto Rico, por sí o por medio de sus empleados deberá acudir al Registro de la Propiedad procedente para anotar el correspondiente embargo sobre los bienes inmuebles o derechos reales que figuren a favor del deudor, tan pronto tal contribución haya sido impuesta; *Disponiéndose*, que si El Pueblo de Puerto Rico se adjudicare para el cobro de esta contribución y sus recargos una propiedad sujeta a un gravamen anterior, el dueño de tal gravamen podrá ejecutarlo contra dicha propiedad haciendo a El Pueblo de Puerto Rico parte demandada en el procedimiento que se siga, para lo cual El Pueblo de Puerto Rico otorga su consentimiento.''

Y sostiene la dicha parte apelante que esa ley aunque se aprobara con posterioridad a su demanda y al pago de la contribución bajo protesta, le es aplicable y resuelve de plano a su favor la cuestión envuelta en el litigio.

Tampoco estamos conformes. El efecto retroactivo de esa ley, como alega la parte apelada, se refiere a contribuciones adeudadas a la fecha en que empezó a regir, no a las que ya hubiesen sido pagadas o estuviesen en litigio.

La sentencia en este caso se dictó en abril 29, 1933, basada en una opinión que declara que las contribuciones de que se trata pagadas bajo protesta en septiembre 5, 1931, eran gravámenes preferentes a la hipoteca en cuestión, y el derecho reconocido al Pueblo no debe ser afectado por la retroactividad que se dé a la ley, porque ello equivaldría a revocar por ley la sentencia de la corte de distrito, función que corresponde a esta Corte Suprema dentro de un recurso de apelación.

En el caso de *Charles Baumbach Co.* v. *Singer*, 86 Wis. 329, 56 N. W. 873, se dijo:

''La querellada es una acreedora por sentencia de la firma de Schwartz & Co., y entabló procedimiento de embargo (*garnishee pro-*

774

*cess*) contra Singer, que es la cesionaria de dicha firma mediante cesión voluntaria. Se desprendía indisputablemente que el comisionado del tribunal que recibió la fianza del cesionario dejó de hacer constar su aprobación al dorso de la misma. Por tal motivo la corte sentenciadora resolvió que la cesión era nula y que la firma que trabó el embargo era responsable. Esta misma cuestión fué resuelta en Shakman v. Schlueter, 77 Wis. 402, 46 N.W. Rep. 542; y, de acuerdo con el razonamiento y la autoridad de ese caso, es claro que la sentencia de la corte inferior era correcta.

"Después de dictada sentencia en este caso se aprobó el capítulo 276 de las Leyes de 1893, el que, refiriéndose a tales fianzas, trata de disponer que 'todas las fianzas hasta ahora prestadas y archivadas . . . por el referido comisionado judicial son por la presente suficientemente aprobadas y declaradas válidas.' Esta ley no puede afectar la sentencia dictada en este caso. 'La acción legislativa no puede retrotraerse a controversias pasadas, ni revocar decisiones que las cortes, en el ejercicio de su autoridad indubitada, han dictado, toda vez que ello equivaldría al ejercicio del poder judicial.' Cooley, Const. Lim. (6ta. Ed.) p. 112. Debe confirmarse la sentencia de la corte superior."

De acuerdo con el estado de la ley cuando el pago bajo protesta se hizo y cuando la sentencia recurrida fué dictada, la recurrente debía la contribución, careciendo por tanto de derecho para ajustar la acción que interpuso. La Legislatura no pudo tener la intención de crear un derecho basado en una transacción anterior, especialmente cuando existe sentencia en favor de una de las partes que resultaría perjudicada al darse a la ley efecto retroactivo.

La pregunta formulada debe contestarse, pues en la negativa: No se cometió el segundo de los errores señalados. Tampoco el tercero.

■ Para sostener que las cuotas por seguro obrero no deben cobrarse con preferencia a su crédito hipotecario, invoca la recurrente lo resuelto por la Corte de Circuito de Apelaciones del Primer Circuito en el caso de *Domenech* v. *Lee,* 66 F. (2d) 31, a saber:

"Las siguientes contribuciones se refieren a las primas impuestas para la Comisión de Indemnizaciones a Obreros para los años fiscales

1928–1929 a 1930–1931, inclusive, más recargos, ascendentes en total a $4,501.86. La sección 38 de las Leyes de Puerto Rico (Ley núm. 85) aprobada el 14 de mayo de 1928, provee:

" 'El Tesorero de Puerto Rico queda por la presente facultado y autorizado para imponer, tasar y recaudar de todo patrono de obreros incluídos en esta Ley, y se le ordena que les imponga, tase y recaude, semestralmente y por anticipado, las cuotas anuales determinadas con arreglo al precedente artículo sobre el importe total de los jornales pagados por dicho patrono a obreros que tenían o hubieren tenido derecho a los beneficios de esta Ley, durante el año anterior a la imposición de las cuotas, si ésta hubiere estado vigente; . . .

" 'Las cuotas se fijarán tan pronto se reciba en las oficinas del Superintendente de Seguros el estado duplicado a que se hace referencia en el artículo 40, tomando como base para dicho fin la cantidad total desembolsada por dicho patrono, por concepto de jornales de los obreros empleados por cada patrono durante el año anterior, que tenían o hubieren tenido derecho a los beneficios de esta Ley. Al patrono que no pagare el total de las cuotas que le fueren legalmente impuestas, dentro del plazo fijado por el Tesorero se le concederán treinta (30) días de gracia y si vencido este término el patrono no pagare, el Tesorero de Puerto Rico, sin excusa ni dilación alguna, trabará embargo sobre cualesquiera bienes del patrono y procederá al cobro de la cuota adeudada como si del cobro de la contribución sobre la propiedad se tratare; *Disponiéndose,* que el Tesorero de Puerto Rico podrá cobrar recargos por cada mes o fracción del mismo, en que las cuotas permanezcan sin pagarse, a razón del uno (1) por ciento mensual; *Y disponiéndose, además,* que el Tesorero de Puerto Rico queda facultado, para utilizar los servicios de los funcionarios y empleados de la Comisión, para ayudar a las gestiones del cobro de las cuotas y las tramitaciones de los embargos que procedieren.'

"La sección 40, después de imponer a todo patrono de obreros con derecho a los beneficios de la ley la obligación de radicar un estado por duplicado, bajo juramento, expresando el número de obreros empleados por dicho patrono y la cantidad total de jornales pagados a dichos obreros durante el año económico anterior, o bien prueba de estar asegurado en alguna de las formas autorizadas por la ley, dispone que las cuotas o primas serán computadas sobre la suma total de jornales prescritos en las secciones 37 y 38 de la ley, y en el segundo párrafo se dispone:

" 'Por la presente se declara que el cobro de estas cuotas tiene

carácter preferente sobre cualquier otra deuda del patrono y que la misma constituirá un gravamen sobre la propiedad del patrono tan pronto dicha cuota deje de ser satisfecha al aviso de pago, con la misma prelación que las primas de seguro adeudadas a los aseguradores de acuerdo con el código civil.'

"Por la sección 55 las cantidades existentes en el fondo de depósito para indemnizaciones a obreros creado por el artículo 1º. de una ley similar aprobada en 13 de abril de 1916, fueron reasignadas para llevar a efecto las disposiciones de dicha ley, y por la sección 57 toda ley o parte de ley que se oponga a la misma quedó por ella derogada.

"La ley de 1916 (Leyes de ese año, núm. 19) era en muchos aspectos similar a la de 1928. Sin embargo, en vez de imponer primas o cuotas semestrales, basadas en el total de los jornales, las imponía anualmente, y el último párrafo de la sección 14 proveía:

" 'Si el patrono no pagare las cuotas que le fueren legalmente impuestas, el Tesorero de Puerto Rico decretará el embargo de bienes de dicho patrono y procederá a la subasta de los mismos por los trámites establecidos en la Ley para asegurar y hacer efectivas las contribuciones sobre la propiedad adeudadas y no satisfechas.'

"A este respecto las disposiciones de la cláusula últimamente citada de la ley de 1916 son substancialmente similares a las de la última cláusula citada de la sección 38 de la ley de 1928. Pero la ley de 1916 no contenía una disposición similar a la contenida en la última cláusula de la sección 40 de la ley de 1928, al efecto de que estas primas o cuotas tienen carácter preferente sobre cualquiera otra deuda del patrono y que las mismas constituyen un gravamen sobre la propiedad del patrono con la misma preferencia otorgada a las primas de seguro adeudadas a los aseguradores bajo el Código Civil (véase el artículo 1824).

"El párrafo arriba citado de la sección 40 de la ley de 1928 que constituye tales primas o cuotas en un gravamen y les da la misma preferencia otorgada a las primas de seguro adeudadas a los aseguradores bajo el Código Civil (artículo 1824) y que el Tesorero sostiene les da prelación sobre cualquier gravamen hipotecario, no fué aprobada hasta el 14 de mayo de 1928, o sea unos dos años después de haberse otorgado el gravamen hipotecario aquí envuelto. Siendo ello así, somos del criterio que esta disposición de la ley no debe ser interpretada en el sentido de darles un gravamen superior y preferente sobre la hipoteca del interventor, ya que el darles tal efecto equivaldría a menoscabar la obligación de los contratos creada por la hipoteca constituída en favor de la George L. Squier Manufac-

turing Company en 1926. Carta Orgánica de Puerto Rico, sección 2, párrafo 5 (48 USCA, sección 737, párrafo 5). Por tanto, El Pueblo de Puerto Rico no tenía un gravamen superior y preferente a la hipoteca sobre los bienes inmuebles para el cobro de estas primas o cuotas.

"No consideramos la doctrina del caso de New York Terminal Co. v. Gaus, 204 N. Y. 512, 98 N. E. 11, aplicable al presente. Allí se resolvió que el Estado de Nueva York, a virtud de un estatuto que le concedía un gravamen por el pago de ciertas contribuciones y por razón de su soberanía bajo el derecho común, tenía un gravamen superior y preferente a los constituídos anteriormente sobre los bienes del contribuyente. La ley de Puerto Rico en 1916, vigente al otorgarse la hipoteca en 1926, no fijaba un gravamen sobre los bienes inmuebles, como lo hacía el estatuto de Nueva York, y nada hay aquí que demuestre que bajo la ley civil El Pueblo de Puerto Rico, a virtud de su soberanía, tenga algún derecho superior y preferente al de los otros acreedores, y mucho menos sobre un acreedor hipotecario anterior. En el caso de Marshall v. New York, 254 U. S. 380, 41 S. Ct. 143, 65 L. Ed. 315, se dice en verdad que según el derecho común de Nueva York, tal cual ha sido heredado de Inglaterra, el Estado, por razón de su soberanía, no tiene prioridad sobre un gravamen existente con anterioridad, en ausencia de un estatuto que otorgue tal gravamen."

La opinión de la Corte de Circuito parte de la base de la Ley No. 19 de 1916 (pág. 51) como única existente cuando se constituyó la hipoteca y si ello fuera en verdad así, tendríamos que reconocer la existencia del tercero de los errores señalados. Pero la Ley No. 19 de 1916 fué derogada por la Ley No. 10 de 1918 (pág. 55) que tal como fué enmendada por la Ley No. 102 de 1925 (pág. 905) contiene al final de su artículo 13 una disposición que dice:

"Por la presente se declara que el cobro de estas cuotas tiene carácter preferente sobre cualquier otra deuda del patrono y que la misma constituirá un gravamen sobre la propiedad del patrono tan pronto dicha cuota deje de ser satisfecha al aviso de pago."

Si se hubiera llamado la atención de la Corte de Circuito hacia esa disposición legal, de acuerdo con su propio razonamiento hubiera llegado seguramente a una conclusión distinta.

En este caso concreto que estamos estudiando y resolviendo las cuotas por seguro obrero impuestas a Zalduondo por los años fiscales 1926–27 y 1927–28 lo fueron de acuerdo con la Ley No. 10 de 1918, enmendada por la Ley No. 102 de 1925 y el aviso de pago se dió en septiembre 28, 1927, convirtiéndose desde entonces dichas cuotas en gravamen preferente sobre la propiedad del patrono a cualquier otra deuda constituída antes o después, pero con posterioridad desde luego al año de 1925 y por consiguiente de la hipoteca de la recurrente que lo fué en 1927.

Las otras cuotas o sea las correspondientes a los años fiscales 1928–29 y 1929–30 se impusieron de acuerdo con la Ley No. 85 de 1928 (pág. 631) dándose los avisos de pago en marzo 11, 1929, y marzo 25, 1930, respectivamente. El artículo de la ley de 1928 que corresponde al 13 de la de 1918 enmendada en 1925, es el 40 que en lo pertinente dice:

"Por la presente se declara que el cobro de estas cuotas tiene carácter preferente sobre cualquier otra deuda del patrono y que la misma constituirá un gravamen sobre la propiedad del patrono tan pronto dicha cuota deje de ser satisfecha al aviso de pago, con la misma prelación que las primas de seguro adeudadas a los aseguradores de acuerdo con el código civil."

La ley es clara y aunque se aprobó después de constituída la hipoteca de la recurrente no menoscaba el contrato hipotecario porque cuando éste fué celebrado regía otra ley similar que tuvo que ser tomada en consideración por las partes contratantes.

*Debe confirmarse la sentencia recurrida.*